WALKER *v.* ARMCO STEEL CORP.

No. 78–1862.   Argued January 8, 1980—Decided June 2, 1980

Marshall, J., delivered the opinion for a unanimous Court.

*Don Manners* argued the cause and filed a brief for petitioner.

*Jay M. Galt* argued the cause and filed a brief for respondent.

Mr. Justice Marshall delivered the opinion of the Court.

This case presents the issue whether in a diversity action the federal court should follow state law or, alternatively, Rule 3 of the Federal Rules of Civil Procedure in determining when an action is commenced for the purpose of tolling the state statute of limitations.

I

According to the allegations of the complaint, petitioner, a carpenter, was injured on August 22, 1975, in Oklahoma City, Okla., while pounding a Sheffield nail into a cement wall. Respondent was the manufacturer of the nail. Petitioner claimed that the nail contained a defect which caused its head to shatter and strike him in the right eye, resulting in permanent injuries. The defect was allegedly caused by respondent's negligence in manufacture and design.

Petitioner is a resident of Oklahoma, and respondent is a foreign corporation having its principal place of business in a

State other than Oklahoma. Since there was diversity of citizenship, petitioner brought suit in the United States District Court for the Western District of Oklahoma. The complaint was filed on August 19, 1977. Although summons was issued that same day,[1] service of process was not made on respondent's authorized service agent until December 1, 1977.[2] On January 5, 1978, respondent filed a motion to dismiss the complaint on the ground that the action was barred by the applicable Oklahoma statute of limitations. Although the complaint had been filed within the 2-year statute of limitations, Okla. Stat., Tit. 12, § 95 (1971),[3] state law does not deem the action "commenced" for purposes of the statute of limitations until service of the summons on the defendant,

---

[1] The Court of Appeals stated that summons was issued the following day, August 20. See 592 F. 2d 1133, 1134 (CA10 1979). However, the docket sheet in the District Court indicates that summons was issued August 19. See App. insert preceding p. A–1. Nothing turns on this difference.

[2] The record does not indicate why this delay occurred. The face of the process record shows that the United States Marshal acknowledged receipt of the summons on December 1, 1977, and that service was effectuated that same day. *Id.*, at A–5. At oral argument counsel for petitioner stated that the summons was found "in an unmarked folder in the filing cabinet" in counsel's office some 90 days after the complaint had been filed. Tr. of Oral Arg. 3. See also *id.*, at 6. Counsel conceded that the summons was not delivered to the Marshal until December 1. *Id.*, at 3–4. It is unclear why the summons was placed in the filing cabinet. See *id.*, at 17.

[3] Under Oklahoma law, a suit for products liability, whether based on a negligence theory or a breach of implied warranty theory, is governed by the 2-year statute of limitations period of Okla. Stat., Tit. 12, § 95 (1971). See *Hester* v. *Purex Corp.*, 534 P. 2d 1306, 1308 (Okla. 1975); *O'Neal* v. *Black & Decker Manufacturing Co.*, 523 P. 2d 614, 615 (Okla. 1974); *Kirkland* v. *General Motors Corp.*, 521 P. 2d 1353, 1361 (Okla. 1974). The period begins to run from the date of injury. *O'Neal* v. *Black & Decker Manufacturing Co., supra,* at 615; *Kirkland* v. *General Motors Corp., supra,* at 1361.

Okla. Stat., Tit. 12, § 97 (1971).[4] If the complaint is filed within the limitations period, however, the action is deemed to have commenced from that date of filing if the plaintiff serves the defendant within 60 days, even though that service may occur outside the limitations period. *Ibid.* In this case, service was not effectuated until long after this 60-day period had expired. Petitioner in his reply brief to the motion to dismiss admitted that his case would be foreclosed in state court, but he argued that Rule 3 of the Federal Rules of Civil Procedure governs the manner in which an action is commenced in federal court for all purposes, including the tolling of the state statute of limitations.[5]

The District Court dismissed the complaint as barred by the Oklahoma statute of limitations. 452 F. Supp. 243 (1978). The court concluded that Okla. Stat., Tit. 12, § 97 (1971) was "an integral part of the Oklahoma statute of limitations," 452 F. Supp., at 245, and therefore under *Ragan* v. *Merchants Transfer & Warehouse Co.*, 337 U. S. 530 (1949), state law applied. The court rejected the argument that *Ragan* had been implicitly overruled in *Hanna* v. *Plumer*, 380 U. S. 460 (1965).

---

[4] Oklahoma Stat., Tit. 12, § 97 (1971), provides in pertinent part: "An action shall be deemed commenced, within the meaning of this article [the statute of limitations], as to each defendant, at the date of the summons which is served on him, or on a codefendant, who is a joint contractor or otherwise united in interest with him. . . . An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons, . . . within sixty (60) days."

[5] Petitioner also argued in his reply brief to the motion to dismiss that respondent should have relied on Federal Rule of Civil Procedure 41—dismissal for failure to prosecute—rather than the state statute of limitations. Respondent in its response to the reply brief argued that a Rule 41 argument was implicit in its motion to dismiss. Neither the District Court nor the Court of Appeals addressed this issue.

The United States Court of Appeals for the Tenth Circuit affirmed. 592 F. 2d 1133 (1979). That court concluded that Okla. Stat., Tit. 12, § 97 (1971), was in "direct conflict" with Rule 3. 592 F. 2d, at 1135. However; the Oklahoma statute was "indistinguishable" from the statute involved in *Ragan*, and the court felt itself "constrained" to follow *Ragan*. 592 F. 2d, at 1136.

We granted certiorari, 444 U. S. 823 (1979), because of a conflict among the Courts of Appeals.[6] We now affirm.

## II

The question whether state or federal law should apply on various issues arising in an action based on state law which has been brought in federal court under diversity of citizenship jurisdiction has troubled this Court for many years. In the landmark decision of *Erie R. Co.* v. *Tompkins,* 304 U. S. 64 (1938), we overturned the rule expressed in *Swift* v. *Tyson,* 16 Pet. 1 (1842), that federal courts exercising diversity jurisdiction need not, in matters of "general jurisprudence," apply the nonstatutory law of the State. The Court noted

---

[6] Compare case below; *Rose* v. *K. K. Masutoku Toy Factory Co.,* 597 F. 2d 215 (CA10 1979); *Lindsey* v. *Dayton-Hudson Corp.,* 592 F. 2d 1118, 1121–1123 (CA10), cert. denied, 444 U. S. 856 (1979); *Witherow* v. *Firestone Tire & Rubber Co.,* 530 F. 2d 160, 163–166 (CA3 1976); *Anderson* v. *Papillion,* 445 F. 2d 841 (CA5 1971) *(per curiam)*; *Groninger* v. *Davison,* 364 F. 2d 638 (CA8 1966); *Sylvester* v. *Messler,* 351 F. 2d 472 (CA6 1965) *(per curiam)*, cert. denied, 382 U. S. 1011 (1966), all holding that state law controls, with *Smith* v. *Peters,* 482 F. 2d 799 (CA6 1973), cert. denied, 415 U. S. 989 (1974), and *Sylvestri* v. *Warner & Swasey Co.,* 398 F. 2d 598 (CA2 1968), holding that Rule 3 controls. See also *Ingram* v. *Kumar,* 585 F. 2d 566, 568 (CA2 1978) (reaffirming *Sylvestri*), cert. denied, 440 U. S. 940 (1979); *Prashar* v. *Volkswagen of America, Inc.,* 480 F. 2d 947 (CA8 1973) (distinguishing *Ragan*), cert. denied *sub nom. Volkswagenwerk Aktiengesellschaft* v. *Prashar,* 415 U. S. 994 (1974); *Chappell* v. *Rouch,* 448 F. 2d 446 (CA10 1971) (distinguishing *Ragan*). See generally *Walko Corp.* v. *Burger Chef Systems, Inc.,* 180 U. S. App. D. C. 306, 308–311, 554 F. 2d 1165, 1167–1170 (1977) (dicta).

that "[d]iversity of citizenship jurisdiction was conferred in order to prevent apprehended discrimination in state courts against those not citizens of the State," *Erie R. Co.* v. *Tompkins, supra,* at 74. The doctrine of *Swift* v. *Tyson* had led to the undesirable results of discrimination in favor of noncitizens, prevention of uniformity in the administration of state law, and forum shopping. 304 U. S., at 74–75. In response, we established the rule that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any [diversity] case is the law of the State," *id.,* at 78.

In *Guaranty Trust Co.* v. *York,* 326 U. S. 99 (1945), we addressed ourselves to "the narrow question whether, when no recovery could be had in a State court because the action is barred by the statute of limitations, a federal court in equity can take cognizance of the suit because there is diversity of citizenship between the parties," *id.,* at 107. The Court held that the *Erie* doctrine applied to suits in equity as well as to actions at law. In construing *Erie* we noted that "[i]n essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." 326 U. S., at 109. We concluded that the state statute of limitations should be applied. "Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law." *Id.,* at 110.

The decision in *York* led logically to our holding in *Ragan* v. *Merchants Transfer & Warehouse Co., supra.* In *Ragan,* the plaintiff had filed his complaint in federal court on September 4, 1945, pursuant to Rule 3 of the Federal Rules of

Civil Procedure. The accident from which the claim arose had occurred on October 1, 1943. Service was made on the defendant on December 28, 1945. The applicable statute of limitations supplied by Kansas law was two years. Kansas had an additional statute which provided: "An action shall be deemed commenced within the meaning of [the statute of limitations], as to each defendant, at the date of the summons which is served on him. . . . An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days." Kan. Gen. Stat. § 60–308 (1935). The defendant moved for summary judgment on the ground that the Kansas statute of limitations barred the action since service had not been made within either the 2-year period or the 60-day period. It was conceded that had the case been brought in Kansas state court it would have been barred. Nonetheless, the District Court held that the statute had been tolled by the filing of the complaint. The Court of Appeals reversed because "the requirement of service of summons within the statutory period was an integral part of that state's statute of limitations." *Ragan,* 337 U. S., at 532.

We affirmed, relying on *Erie* and *York.* "We cannot give [the cause of action] longer life in the federal court than it would have had in the state court without adding something to the cause of action. We may not do that consistently with *Erie R. Co.* v. *Tompkins.*" 337 U. S., at 533–534. We rejected the argument that Rule 3 of the Federal Rules of Civil Procedure governed the manner in which an action was commenced in federal court for purposes of tolling the state statute of limitations. Instead, we held that the service of summons statute controlled because it was an integral part of the state statute of limitations, and under *York* that statute of limitations was part of the state-law cause of action.

*Ragan* was not our last pronouncement in this difficult area, however. In 1965 we decided *Hanna* v. *Plumer,* 380 U. S. 460, holding that in a civil action where federal jurisdiction was based upon diversity of citizenship, Rule 4 (d)(1) of the Federal Rules of Civil Procedure, rather than state law, governed the manner in which process was served. Massachusetts law required in-hand service on an executor or administrator of an estate, whereas Rule 4 permits service by leaving copies of the summons and complaint at the defendant's home with some person "of suitable age and discretion." The Court noted that in the absence of a conflicting state procedure, the Federal Rule would plainly control, 380 U. S., at 465. We stated that the "outcome-determination" test of *Erie* and *York* had to be read with reference to the "twin aims" of *Erie:* "discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U. S., at 468. We determined that the choice between the state in-hand service rule and the Federal Rule "would be of scant, if any, relevance to the choice of a forum," for the plaintiff "was not presented with a situation where application of the state rule would wholly bar recovery; rather, adherence to the state rule would have resulted only in altering the way in which process was served." *Id.,* at 469 (footnote omitted). This factor served to distinguish that case from *York* and *Ragan.* See 380 U. S., at 469, n. 10.

The Court in *Hanna,* however, pointed out "a more fundamental flaw" in the defendant's argument in that case. *Id.,* at 469. The Court concluded that the *Erie* doctrine was simply not the appropriate test of the validity and applicability of one of the Federal Rules of Civil Procedure:

> "The *Erie* rule has never been invoked to void a Federal Rule. It is true that there have been cases where this Court had held applicable a state rule in the face of an argument that the situation was governed by one of the

Federal Rules. But the holding of each such case was not that *Erie* commanded displacement of a Federal Rule by an inconsistent state rule, but rather that the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, *Erie* commanded the enforcement of state law." 380 U. S., at 470.

The Court cited *Ragan* as one of the examples of this proposition, 380 U. S., at 470, n. 12.[7] The Court explained that where the Federal Rule was clearly applicable, as in *Hanna*, the test was whether the Rule was within the scope of the Rules Enabling Act, 28 U. S. C. § 2072, and if so, within a constitutional grant of power such as the Necessary and Proper Clause of Art. I. 380 U. S., at 470–472.

### III

The present case is indistinguishable from *Ragan*. The statutes in both cases require service of process to toll the statute of limitations, and in fact the predecessor to the Oklahoma statute in this case was derived from the predecessor to the Kansas statute in *Ragan*. See *Dr. Koch Vegetable Tea Co.* v. *Davis*, 48 Okla. 14, 22, 145 P. 337, 340 (1914). Here, as in *Ragan*, the complaint was filed in federal court under diversity jurisdiction within the 2-year statute of limitations, but service of process did not occur until after the 2-year period and the 60-day service period had run. In both cases the suit would concededly have been barred in the applicable state court, and in both instances the state service statute was held to be an integral part of the statute of limitations by the lower court more familiar than we with state law. Accordingly, as the Court of Appeals held below,

---

[7] The Court in *Hanna* noted that "this Court has never before been confronted with a case where the applicable Federal Rule is in direct collision with the law of the relevant State." 380 U. S., at 472.

the instant action is barred by the statute of limitations unless *Ragan* is no longer good law.

Petitioner argues that the analysis and holding of *Ragan* did not survive our decision in *Hanna*.[8]  Petitioner's position is that Okla. Stat., Tit. 12, § 97 (1971), is in direct conflict with the Federal Rule.  Under *Hanna,* petitioner contends, the appropriate question is whether Rule 3 is within the scope of the Rules Enabling Act and, if so, within the constitutional power of Congress.  In petitioner's view, the Federal Rule is to be applied unless it violates one of those two restrictions.  This argument ignores both the force of *stare decisis* and the specific limitations that we carefully placed on the *Hanna* analysis.

We note at the outset that the doctrine of *stare decisis* weighs heavily against petitioner in this case.  Petitioner seeks to have us overrule our decision in *Ragan.*  *Stare decisis* does not mandate that earlier decisions be enshrined forever, of course, but it does counsel that we use caution in rejecting established law.  In this case, the reasons petitioner asserts for overruling *Ragan* are the same factors which we concluded in *Hanna* did not undermine the validity of *Ragan.*  A litigant who in effect asks us to reconsider not one but two prior decisions bears a heavy burden of supporting such a change in our jurisprudence.  Petitioner here has not met that burden.

This Court in *Hanna* distinguished *Ragan* rather than overruled it, and for good reason.  Application of the *Hanna* analysis is premised on a "direct collision" between the Federal Rule and the state law.  380 U. S., at 472.  In *Hanna* itself the "clash" between Rule 4 (d) (1) and the state in-hand service requirement was "unavoidable."  380 U. S., at 470.  The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before

---

[8] Mr. Justice Harlan in his concurring opinion in *Hanna* concluded that *Ragan* was no longer good law.  380 U. S., at 474–478.  See also *Sylvestri* v. *Warner & Swasey Co.,* 398 F. 2d 598 (CA2 1968).

the Court. It is only if that question is answered affirmatively that the *Hanna* analysis applies.[9]

As has already been noted, we recognized in *Hanna* that the present case is an instance where "the scope of the Federal Rule [is] not as broad as the losing party urge[s], and therefore, there being no Federal Rule which cover[s] the point in dispute, *Erie* command[s] the enforcement of state law." *Ibid.* Rule 3 simply states that "[a] civil action is commenced by filing a complaint with the court." There is no indication that the Rule was intended to toll a state statute of limitations,[10] much less that it purported to displace state

---

[9] This is not to suggest that the Federal Rules of Civil Procedure are to be narrowly construed in order to avoid a "direct collision" with state law. The Federal Rules should be given their plain meaning. If a direct collision with state law arises from that plain meaning, then the analysis developed in *Hanna* v. *Plumer* applies.

[10] "Rule 3 simply provides that an action is commenced by filing the complaint and has as its primary purpose the measuring of time periods that begin running from the date of commencement; the rule does not state that filing tolls the statute of limitations." 4 C. Wright & A. Miller, Federal Practice and Procedure § 1057, p. 191 (1969) (footnote omitted).

The Note of the Advisory Committee on the Rules states:

"When a Federal or State statute of limitations is pleaded as a defense, a question may arise under this rule whether the mere filing of the complaint stops the running of the statute, or whether any further step is required, such as, service of the summons and complaint or their delivery to the marshal for service. The answer to this question may depend on whether it is competent for the Supreme Court, exercising the power to make rules of procedure without affecting substantive rights, to vary the operation of statutes of limitations. The requirement of Rule 4 (a) that the clerk shall forthwith issue the summons and deliver it to the marshal for service will reduce the chances of such a question arising." 28 U. S. C. App., pp. 394–395.

This Note establishes that the Advisory Committee predicted the problem which arose in *Ragan* and arises again in the instant case. It does not indicate, however, that Rule 3 was *intended* to serve as a tolling provision for statute of limitations purposes; it only suggests that the Advisory Committee thought the Rule *might* have that effect.

tolling rules for purposes of state statutes of limitations. In our view, in diversity actions [11] Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations. Cf. 4 C. Wright & A. Miller, Federal Practice and Procedure § 1057, pp. 190–191 (1969); *id.,* § 1051, at 165–166.

In contrast to Rule 3, the Oklahoma statute is a statement of a substantive decision by that State that actual service on, and accordingly actual notice by, the defendant is an integral part of the several policies served by the statute of limitations. See *C & C Tile Co.* v. *Independent School District No. 7 of Tulsa County,* 503 P. 2d 554, 559 (Okla. 1972). The statute of limitations establishes a deadline after which the defendant may legitimately have peace of mind; it also recognizes that after a certain period of time it is unfair to require the defendant to attempt to piece together his defense to an old claim. A requirement of actual service promotes both of those functions of the statute. See generally *ibid.; Seitz* v. *Jones,* 370 P. 2d 300, 302 (Okla. 1961). See also Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693, 730–731 (1974). [12] It is these policy aspects which make the service

---

[11] The Court suggested in *Ragan* that in suits to enforce rights under a federal statute Rule 3 means that filing of the complaint tolls the applicable statute of limitations. 337 U. S., at 533, distinguishing *Bomar* v. *Keyes,* 162 F. 2d 136, 140–141 (CA2), cert. denied, 332 U. S. 825 (1947). See Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693, 729 (1974). See also *Walko Corp.* v. *Burger Chef Systems, Inc.,* 180 U. S. App. D. C., at 308, n. 19, 554 F. 2d, at 1167, n. 19; 4 Wright & Miller, *supra,* § 1056, and authorities collected therein. We do not here address the role of Rule 3 as a tolling provision for a statute of limitations, whether set by federal law or borrowed from state law, if the cause of action is based on federal law.

[12] The importance of actual service, with corresponding actual notice, to the statute of limitations scheme in Oklahoma is further demonstrated by the fact that under Okla. Stat., Tit. 12, § 97 (1971), the statute of limitations must be tolled as to each defendant through individual service, unless a codefendant who is served is "united in interest" with the unserved

requirement an "integral" part of the statute of limitations both in this case and in *Ragan*. As such, the service rule must be considered part and parcel of the statute of limitations.[13] Rule 3 does not replace such policy determinations found in state law. Rule 3 and Okla. Stat., Tit. 12, § 97 (1971), can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict.

Since there is no direct conflict between the Federal Rule and the state law, the *Hanna* analysis does not apply.[14] Instead, the policies behind *Erie* and *Ragan* control the issue whether, in the absence of a federal rule directly on point, state service requirements which are an integral part of the state statute of limitations should control in an action based on state law which is filed in federal court under diversity

defendant. That requirement, like the service requirement itself, does nothing to promote the general policy behind all statutes of limitations of keeping stale claims out of court. Instead, the service requirement furthers a different but related policy decision: that each defendant has a legitimate right not to be surprised by notice of a lawsuit after the period of liability has run. If the defendant is "united in interest" with a codefendant who has been served, then presumably the defendant will receive actual notice of the lawsuit through the codefendant and will not have his peace of mind disturbed when he receives official service of process. Similarly, the defendant will know that he must begin gathering his evidence while that task is still deemed by the State to be feasible.

[13] The substantive link of § 97 to the statute of limitations is made clear as well by another provision of Oklahoma law. Under Okla. Stat., Tit. 12, § 151 (1971), "[a] civil action is deemed commenced by filing in the office of the court clerk of the proper court a petition and by the clerk's issuance of summons thereon." This is the state-law corollary to Rule 3. However, § 97, not § 151, controls the commencement of the lawsuit for statute of limitations purposes. See *Tyler* v. *Taylor*, 578 P. 2d 1214 (Okla. App. 1977). Just as § 97 and § 151 can both apply in state court for their separate purposes, so too § 97 and Rule 3 may both apply in federal court in a diversity action.

[14] Since we hold that Rule 3 does not apply, it is unnecessary for us to address the second question posed by the *Hanna* analysis: whether Rule 3, if it applied, would be outside the scope of the Rules Enabling Act or beyond the power of Congress under the Constitution.

jurisdiction. The reasons for the application of such a state service requirement in a diversity action in the absence of a conflicting federal rule are well explained in *Erie* and *Ragan*, see *supra*, at 744–746, and need not be repeated here. It is sufficient to note that although in this case failure to apply the state service law might not create any problem of forum shopping,[15] the result would be an "inequitable administration" of the law. *Hanna* v. *Plumer*, 380 U. S., at 468. There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants. The policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it.

The judgment of the Court of Appeals is

*Affirmed.*

---

[15] There is no indication that when petitioner filed his suit in federal court he had any reason to believe that he would be unable to comply with the service requirements of Oklahoma law or that he chose to sue in federal court in an attempt to avoid those service requirements.