Ernest DAVIS, Sr.

v.

JOHNS-MANVILLE PRODUCTS, et al.

Civ. A. No. 77-2282.

United States District Court,
E.D. Louisiana.

May 3, 1991.

Rodney P. Vincent, Jill D. Trahan, Gertler, Gertler & Vincent, New Orleans, La., for Sidney Benoit.

A. Wendel Stout, Janet MacDonell, Deutsch, Kerrigan & Stiles, New Orleans, La., for Turner & Newall, plc.

## ORDER

ARCENEAUX, District Judge.

The Court, after considering the complaint, the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge, and the failure of plaintiff to file any objections to the Magistrate Judge's Report and Recommendation, hereby approves the Report and Recommendation and adopts it as its opinion herein. Accordingly,

IT IS ORDERED that the motion of the defendant Turner & Newell, Inc., PLC for summary judgment is DENIED.

## REPORT AND RECOMMENDATION

MICHAELLE PITARD WYNNE,
United States Magistrate Judge.

Plaintiff, Sidney Benoit, filed a complaint on November 27, 1989 against manufacturers and suppliers of asbestos products seeking damages for injuries sustained as a result of his exposure to asbestos during the course of his employment at the Johns-Manville plant operating in Marrero, Louisiana.

The defendant Turner & Newell, plc. (T & N) filed a motion for summary judgment which is opposed by the plaintiff. The matter was submitted.

This motion presents a significant and unusual prescriptive issue in that the exhibits annexed to defendant's motion establish that Benoit was aware as early as December of 1981 that he had sustained an asbestos related lung disease, that he has been involved in asbestos litigation since 1982, but that he failed to commence the instant suit until November of 1989.

Benoit was employed as a laborer by Johns–Manville Sales Corporation a/k/a Johns–Manville Products Corporation from April 1, 1946 through July 30, 1947, and from July 27, 1948 through February 4, 1969. As evidenced by a workmen's compensation suit filed by Benoit in the 24th Judicial District Court for the Parish of Jefferson in April of 1982, he was advised that he was suffering from a lung disease resulting from asbestos exposure following a medical examination performed on December 22, 1981. 24th Judicial District Court for the Parish of Jefferson, Civil Action No. 266168, Division "B".

Benoit filed a tort suit on May 18, 1982 against the Johns–Manville Corporation and the Johns–Manville Sales Corporation, executive officers of those corporations and several manufacturers of respirator masks alleging he sustained an asbestos related injury during the course of his employment with the Johns–Manville Sales Corporation. E.D.La. Civil Action 82–2046 "E" (5). The case was consolidated in the Davis consolidation which is a group of cases filed by plaintiff's counsel on behalf of Johns–Manville employees who allegedly sustained asbestos related injuries in the course of their employment. Civil Action 77–2282 "K" (2) (E.D.La.).

Benoit dismissed his claim against Mine Safety Appliance Company, one of the manufacturers of the respirator masks and its insurer in November of 1983 and the remaining defendant mask manufacturers were dismissed by summary judgment on December 3, 1984. Johns–Manville filed a petition for corporate reorganization on August 26, 1982 and the bankruptcy court stayed all proceedings against it and its executive officers and insurers. Mr. Benoit's case was administratively closed on December 4, 1984 due to the bankruptcy of Johns–Manville. During the course of the bankruptcy reorganization proceedings, the Manville Personal Injury Settlement Trust was created, which entity was authorized to settle asbestos liability claims on behalf of the Trust.

Mr. Benoit executed a receipt and release on October 17, 1988 in which he agreed, in exchange for receipt of a non-disclosed sum of money, to release the Manville Personal Injury Settlement Trust, Manville Corporation from liability for all personal injury claims arising out of exposure to asbestos fibers and/or asbestos containing products, reserving his rights and causes of action against any remaining defendants and parties not included in the Trust. Benoit also agreed in exchange for the aforesaid payment "to take whatever steps are necessary to obtain an Order of Dismissal with Prejudice as to the Trust pursuant to the appropriate Rules of Court ..."

Contrary to the terms of the compromise agreement as well as the rules of this Court, neither Mr. Benoit nor his counsel advised the Court of the settlement nor did they file a stipulation of dismissal.[1] The Court only learned that Mr. Benoit had settled his claim against Johns–Manville, after plaintiff's counsel filed five new lawsuits on behalf of hundreds of plaintiffs against the manufacturers and suppliers of asbestos products to the Marrero plant, and the question of prescription was raised by the defendants. Mr. Benoit was again named as a plaintiff in one of the newly filed complaints and it is the timeliness of that complaint which is at issue herein.[2] After the Court fortuitously learned of the settlement of Mr. Benoit's case, a Judgment of dismissal was entered on September 12, 1990 dismissing the Benoit case with prejudice, as well as a number of

---

1. Rule 8.02 of the Uniform Local Rules of the United States District Courts of the Eastern, Middle and Western Districts of Louisiana provides that whenever a civil case is settled or otherwise disposed of, counsel shall immediately inform the Clerk's office, the Judge to whom the case is allotted, and all persons subpoenaed as witnesses.

2. Mr. Benoit was also named as a plaintiff in one of five companion cases filed in the 24th Judicial District Court for the Parish of Jeffer-

son against the manufacturers and suppliers of asbestos products to the Johns–Manville plant in Marrero, Louisiana. Alfred Alexander, et. al. v. Amtorg Trading Corporation, 24th JDC Civil Action No. 391–031 "J". The cases were removed to federal court and consolidated with the other five cases initially filed in federal court. The Court found the claims of the hundreds of plaintiffs to be diverse in nature and severed the claims of each plaintiff.

other cases in the Davis consolidation which had been settled during the period that they were administratively closed.

■ In its motion for summary judgment, T & N contends plaintiff's cause of action is prescribed because he was aware that he sustained an asbestos-related injury as early as April of 1982, as evidenced by the two previous actions filed by Benoit, and he delayed filing this suit until November of 1989. T & N also argues that the case against Johns–Manville was no longer pending once Benoit settled the case in October of 1988 and that the action filed over one year after that settlement is prescribed.

Plaintiff opposes the motion arguing the suit was timely filed because the original suit against JM was pending at the time the suit was filed against T & N and, pursuant to Louisiana law, it remained pending until a judgment of dismissal was signed on September 12, 1990. Plaintiff argues that he is entitled under Louisiana law to file a new suit against a joint tortfeasor while the suit was pending or within one year of the dismissal of the original suit.

■ This case is brought pursuant to the diversity jurisdiction of this Court. It is well established that federal procedural law and state substantive law apply in a diversity action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Issues concerning state statutes of limitations are considered substantive for purposes of an Erie analysis. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), *Abdul–Alim Amin v. Universal Life Insurance Co.*, 706 F.2d 638 (5th Cir.1983).

■ Plaintiff is alleging that the defendant T & N is solidarily liable with Johns–Manville for the injuries which he sustained as a result of his exposure to asbestos products. Pursuant to Louisiana law, any act that interrupts prescription for one of the solidary obligors benefits all of the others. La.C.C. art. 1793. An interruption of prescription resulting from the filing of a suit in a competent court and in

the proper venue or from service of process within the prescription period continues as long as the suit is pending. Interruption is considered to never have occurred if the plaintiff abandons, voluntarily dismisses or fails to prosecute the case at the trial. La.C.C. art. 3463.

■ The primary issue presented by the defendant's motion is whether or not the suit filed against Johns–Manville in May of 1982 remained "pending" in November of 1989 thus interrupting prescription against all solidary obligors subject to suit by the plaintiff. The parties disagree as to whether state or federal law is applicable to the disposition of this issue.

In *Walker v. Armco Steel*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), the Supreme Court held a state's tolling rules are an integral part of the policies served by the state statute of limitations and that they should generally govern in the absence of an overriding federal rule or affirmative countervailing federal considerations. The Court found that there was no direct conflict between Federal Rule of Civil Procedure 3, which provides that a suit is commenced by filing a complaint with the Court, and an Oklahoma statute, which required service of process of a complaint in order to deem a suit commenced for statute of limitation purposes. The Court applied the state prescriptive law to bar the action, concluding that there was an absence of controlling federal procedural law which specifically addressed the issue raised in the diversity case.

In accord with the Walker decision, appellate courts have held that state laws determine the timeliness of state law claims and related issues such as which events commence an action or toll the statute of limitations. *Hensgens v. Deere & Company*, 869 F.2d 879 (5th Cir.1989), (court sitting in a diversity case, relied on a Louisiana Civil Code provision to determine if a suit filed against an incorrectly identified defendant interrupted prescription), *Calhoun v. Ford*, 625 F.2d 576 (5th Cir. 1980), (La.R.S. 9:5801, providing prescription is not tolled by filing suit in improper venue, was applicable finding F.R.Civ.P. 3

did not address question of when prescriptive period is tolled). Also see *Diffley v. Allied Signal*, 921 F.2d 421 (2d Cir.1990), *Carter v. Washington Metro Transit Authority*, 764 F.2d 854 (D.C.Cir.1985), *Cook v. G.D. Searle & Co.*, 759 F.2d 800 (10th Cir.1985).

Defendant argues that the case against Johns–Manville was no longer "pending" under federal law because plaintiff executed a receipt and release during the time the case was administratively closed. In support of its position, the defendant analogizes the administrative closure to a discretionary stay of a proceeding by a court which defendant asserts become moot upon resolution of all issues in a case.[3]

■ A stay order merely directs the cessation of the prosecution of a matter, but does not result in a dismissal of the case unless the Court renders such an order. *Lawyers Title v. Combined America Properties*, 688 F.Supp. 275 (N.D.Tex.1988). The cases cited by defendant involve instances where a federal court stayed its proceedings pending the resolution of a related state court action and do not support the defendant's argument that the settlement of the case resulted in the automatic termination of the pending case against Johns–Manville for prescriptive purposes.

A review of other pertinent federal procedural law reveals that there is no provision which addresses the "pending case" issue within the context of this case.

■ F.R.Civ.P. 41 establishes the procedures to be employed in obtaining voluntary and involuntary dismissals of actions in federal court. Wright & A. Miller, Federal Practice and Procedure § 2361–2364 at 149–173. In *Vincent v. AC & S*, 833 F.2d 553 (5th Cir.1987), the court relied on the provisions of F.R.Civ.P. 41 to determine whether or not a voluntary dismissal of a case had occurred within the meaning La. C.C. art. 3463.[4] Although F.R.Civ.P. 41 specifically addresses the procedural steps necessary to voluntarily dismiss a case in federal court, it does not define a "pending action" within the context of the Louisiana substantive law concerning the tolling of a statute of limitations.

The Louisiana Supreme Court has addressed that specific issue in the case of *Hebert v. Doctors Memorial Hospital*, 486 So.2d 717 (La.1986). In the Hebert case, the plaintiff was allegedly injured while a patient in a hospital on March 17, 1975 and she filed suit against the hospital on March 15, 1976. Plaintiff amended her complaint to add her treating physician as a defendant on October 3, 1983, and on January 12, 1984, she filed a limited motion to dismiss and submitted a judgment dismissing the action against the hospital which was filed in the record. The doctor filed a motion to dismiss on the basis of prescription and attached to his motion a copy of restrictive receipt and release executed by the parties on March 25, 1982 in which plaintiff agreed to immediately dismiss her suit against the hospital. The District Court granted the doctor's prescription motion and the Court of Appeal affirmed the decision. The Supreme Court reversed the decision of the lower courts, holding a suit is pending until a final judgment dismissing the suit has been filed. The court noted that the mere existence of an instrument purporting to be a valid release is not

3. The order administratively closing the case states that the action was only being closed for statistical purposes, that the court retained jurisdiction over the matter, and that the case could be restored to the trial docket upon motion of a party. The order further stated that it "shall not prejudice the rights of the parties to this litigation".

4. It is relevant to this motion that the Fifth Circuit in Vincent held the plaintiff's notification to the Court that his case was settled was merely a tentative termination of the suit and was not a voluntary dismissal which terminated a pending suit for prescription purposes. The Court held the case remained pending until a formal stipulation of dismissal executed by the parties was filed with the Court. The Court also commented that Louisiana law is in accord with their holding that a voluntary dismissal does not include a tentative dismissal. There was clearly not a voluntary dismissal entered at the time Benoit and Johns–Manville entered into a settlement. However, the rationale of the Vincent court is easily extended to the facts of this case so as to rebut an argument that under federal law, the execution of the receipt and release terminated the pending suit.

controlling since the existence, validity and/or binding nature of the release remains subject to judicial scrutiny until the lawsuit is actually dismissed.

■ T & N argues the Hebert case is distinguishable from this case because the plaintiff therein filed an amended complaint naming a solidary obligor and Benoit was required to file a new suit because he would not have been allowed to file an amended complaint in the original proceeding. Pursuant to Louisiana law, a plaintiff is entitled to commence a new action against a joint tortfeasor, even if he is precluded from filing an amended complaint, as long as the prescriptive period remains interrupted by a pending suit filed in a court of competent jurisdiction and venue. *Batson v. Cherokee Beach and Campgrounds,* 530 So.2d 1128 (La.1988).

The substantive law of Louisiana is not in direct conflict with the federal rule concerning the dismissal of cases or any other federal law. Therefore, this Court, pursuant to the doctrine enunciated in *Erie R. Co. v. Tompkins, supra,* is bound to follow the state law defining the pendency of an action for tolling purposes. *Walker v. Armco Steel, supra.*

■ Defendant further argues that, even under Louisiana law the original Johns–Manville suit was not pending on the relevant date, because plaintiff failed to prosecute the case for five years and therefore it was deemed abandoned pursuant to La.C.C.P. art. 561. A case which has been abandoned is considered to never have interrupted prescription. La.C.C. art. 3463.

Pursuant to La.C.C.P. art. 561, an action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of five years. However, an automatic stay issued by a bankruptcy court pursuant to 11 U.S.C. § 362 abates actions filed against the bankrupt party and tolls the prescriptive period established by C.C.P. art. 561. *Scarborough v. Duke,* 532 So.2d 361 (La.App. 3d Cir. 1988). Plaintiff was unable to prosecute his claim against Johns–Manville or its officers because all actions against them had been stayed by the bankruptcy court. Therefore, the five year period was tolled by the bankruptcy stay and the case cannot be deemed abandoned by Mr. Benoit.

■ Defendant further contends that the case is prescribed because Dr. Morton notified plaintiff's counsel that Benoit suffered from asbestosis in early November, 1988. Pursuant to Louisiana law, the case remained "pending" and continued to interrupt prescription with respect to all solidary obligors of the plaintiff until the Judgment of dismissal was signed on September 12, 1990. The fact that plaintiff's counsel received a diagnosis of asbestosis in early November, 1988 is of no consequence since prescription had previously been, and remained interrupted by the Johns–Manville suit.

■ T & N lastly contends that plaintiff should be equitably estopped from asserting an interruption of prescription because he was in a position to terminate prescription by notifying the Court of the settlement.

Statutes of limitations are primarily designed to assure fairness to defendants and to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Burnett v. New York Central Railroad Company,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Allowing plaintiff to proceed herein is particularly objectionable since he was able to directly control the cessation of the limitation period. The Magistrate does not believe a plaintiff should be rewarded by virtue of legal technicalities, for failing to comply with the intent of a court order.

However, In *Guaranty Trust Co. v. York, supra,* 65 S.Ct. at p. 1470, the Supreme Court addressed the issue of whether a federal court, in equity, could proceed in a diversity suit when recovery was barred by a state statute of limitations. The Court noted the application of the Erie doctrine to suits in equity and held "... the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules

determine the outcome of a litigation, as it would be if tried in State court."

Although the Magistrate is philosophically in disagreement with the outcome dictated by state law, the Erie doctrine binds this Court to apply the substantive law of Louisiana in this diversity case. In this instance the Louisiana law permits a plaintiff to seek a remedy against a solidary obligor outside the usual statutory limitation period. Based on the rationale of the Louisiana Supreme Court in the Hebert case, a Louisiana court would be bound to find that the suit against Johns–Manville remained "pending" at the time that this suit was instituted in November, 1989, and that it continued to interrupt prescription with respect to all solidary obligors indebted to the plaintiff until the September 12, 1990 dismissal. Therefore, this Court is bound under Erie to find that the suit filed against T & N, plc. in November, 1989 was timely filed and to deny the motion for summary judgment.

## RECOMMENDATION

IT IS RECOMMENDED that the motion of the defendant Turner & Newell, Inc., plc for summary judgment be DENIED.