**KOTEC, Victor Z., plaintiff,**

**v.**

**The JAPANESE EDUCATIONAL INSTITUTE OF NEW YORK, defendant.**

**No. 3:03CV1177 (JBA).**

United States District Court, D. Connecticut.

June 15, 2004.

David M. Wallman, Wallman & DiRusso, Stamford, CT, Scott M. Mishkin, Islandia, NY, for Plaintiff.

Deborah S. Freeman, Rebecca L. Bouchard, Bingham McCutchen, Hartford, CT, Douglas T. Schwarz, Bingham McCutchen, Boston, MA, for Defendant.

### Ruling on Motion to Dismiss
### [Doc. # 9]

ARTERTON, District Judge.

For the reasons set forth below, defendant Japanese Educational Institute of New York's ("JEI") motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1)/(6) [Doc. # 9] is GRANTED.[1]

---

1. The standards for either rule, which are "substantively [although not procedurally] identical," *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.2003), are well established: "[T]he court must accept all factual allegations in the complaint as true and draw infer-

## I. Factual Background [2]

On approximately April 29, 2003, Kotec received a right to sue letter (or "release") from the Connecticut Commission on Human Rights and Opportunities ("CHRO"), which provided in pertinent part,

> The complainant must bring an action in Superior Court within ninety (90) days of receipt of this release and within two (2) years of the date of filing the complaint with the Commission.

Aff. of Mishkin in Opp'n [Doc. # 14] Ex. B. On May 14, 2003, JEI's counsel, Deborah S. Freeman wrote Kotec's counsel, Scott M. Mishkin, asking that a copy of any filing in federal district court be sent to her and representing that she would accept service on behalf of JEI. On June 11, 2003, Mishkin telephoned Freeman to inform her that Kotec's complaint would be filed in federal district court in Connecticut and that he would be seeking admission pro hac vice. Freeman "instructed [Mishkin] to serve her with the complaint once 'everything' had been filed." Aff. of Mishkin in Opp'n [Doc. # 14] ¶ 4.

Before Mishkin could represent Kotec before this Court, a member of the Bar of this Court had to sponsor him by written motion. See D. Conn. L. Civ. R. 83.1(d)(1). Accordingly, Mishkin asked David M. Wallman to file the motion for admission pro hac vice on his behalf and, to that end, forwarded to Wallman on July 1, 2003 copies of Kotec's complaint and an original affidavit in support of the motion for admission pro hac vice as required under D. Conn. L. Civ. R. 83.1(d)(1). On July 8, 2003, Kotec filed the present lawsuit, alleging violations of Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act ("CFEPA"), and breach of contract. On July 11, 2003, Wallman notified Mishkin by letter that the complaint had been filed and stated "I will get to the pro hac vice motion shortly." Aff. of Mishkin in Opp'n [Doc. # 14] ¶ 8, Ex. C. On July 30, 2003, Freeman wrote Mishkin and Wallman, referencing her letter of May 14, 2003 and a telephone conversation with Wallman on July 16, 2003, in both of which Freeman had requested a copy of Kotec's complaint, stating that she had yet to receive a copy of the complaint and had no information to indicate that JEI had been served, and asking for a copy of the complaint to be sent to her so that she could review it.

From July 1, 2003 to October 8, 2003, Mishkin contacted Wallman several times to inquire on the status of the motion for Mishkin's admission pro hac vice. On October 8, 2003, Wallman filed the motion on Mishkin's behalf. On October 10, 2003,

---

ences from those allegations in the light most favorable to the plaintiff.... The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997)(quotations and citations omitted). Possible practical consequences flowing from use of either 12(b)(1) or 12(b)(6), for example, the effect on supplemental jurisdiction, *see Lerner*, 318 F.3d at 128–30, are not relevant here.

**2.** The facts are taken solely from Kotec's complaint, the affidavit with attachments submitted by his counsel in opposition to JEI's motion, and the Court's record of the fact of filings and their disposition in this case. These materials may be considered in determining the sufficiency of Kotec's claim under Rule 12(b)(1)/(6). *See Brass v. Am. Film. Techs. Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–1389 (2d Cir.1992); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir.1991); *see also* 1 *Weinstein's Federal Evidence* § 201.12[3] at 201–29 to 201–34, 201–40 (2d ed.2003).

the motion was granted. On October 22, 2003, Freeman was served with a copy of Kotec's complaint.

## II. Discussion

JEI moves to dismiss Kotec's CFEPA claims as time-barred pursuant to Conn. Gen.Stat. § 46a–101(e), which requires "[a]ny action brought by the complainant in accordance with section 46a–100 shall be brought within ninety days of the receipt of the release from the commission." JEI argues that, because Connecticut law considers an action "brought" only upon service of complaint and summons, Kotec's claim is untimely because well over ninety days elapsed between the date Kotec received his right to sue letter from the CHRO, approximately April 29, 2003, and the date the complaint and summons were served on Freeman, October 22, 2003. Kotec principally opposes on the grounds that Freeman's "inducement and trickery led directly to plaintiff not commencing his state law based CFEPA claims until after the ninety (90) day statute of limitations expired," Opp'n [Doc. # 13] at 5, and therefore this case warrants the extraordinary remedy of "equitable tolling." Alternatively, although Kotec concedes that "[a] federal court sitting in either diversity or supplemental jurisdiction looks to state law, and not the federal rules, for purposes of determining when a plaintiff commences an action," id. at 8, he suggests without citation to authority that the close legal connection between his Title VII claim and his CFEPA claim marshals in favor of permitting the commencement rule of Fed. R.Civ.P. 3—filing of complaint—to govern.

### A. Commencement of Suit

■■■ It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered "brought" for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not Fed.R.Civ.P. 3. See e.g., Converse v. General Motors Corp., 893 F.2d 513, 515–16 (2d Cir.1990). Courts have also applied such state rules in the context of state law claims brought under the district court's supplemental jurisdiction, see e.g., Appletree Square I, Ltd. P'ship v. W.R. Grace & Co., 29 F.3d 1283, 1286 (8th Cir.1994); Katsaros v. Serafino, No. Civ. 3:00cv288, 2001 WL 789322, at *2–3 (D.Conn. Feb.28, 2001), as consistent with the Supreme Court's reasoning in Walker v. Armco Steel Corp., 446 U.S. 740, 753, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980):

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

The Court does not consider Kotec's argument—that the overlap in the essential elements of his CFEPA and Title VII claims directs that Fed.R.Civ.P. 3 should control Connecticut's statute of limitations with respect to the CFEPA claim—to be a principled reason to depart from the settled rule for diversity cases, particularly as Kotec cites no authority so holding or supporting such reasoning.

### B. Equitable Considerations

JEI asserts that the ninety day statutory limitation on Kotec's CFEPA claim is jurisdictional and not subject to equitable tolling, and, in the alternative, that the facts set forth by Kotec are "woefully inadequate to warrant this Court's exercise of its extraordinary power of equitable relief." Reply [Doc. # 16] at 6. The Court

agrees with the latter and therefore does not reach the former argument.

◼ Mishkin claims that Freeman's statement on June 11, 2003 that Mishkin serve the complaint on her after Kotec's complaint and Mishkin's motion for admission pro hac vice were filed constituted "trickery" that "led directly" to Kotec's complaint not being served in a timely manner and therefore makes JEI's present statute of limitations challenge "unconscionable." *See* Opp'n [Doc. # 13] at 5, 6. As such, Kotec's claim is one of equitable estoppel not equitable tolling, "invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit," *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985), for example, "where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Id.; see also Kavowras v. New York Times Co.*, 328 F.3d 50, 56 (2d Cir. 2003)("... an estoppel arises if (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment.")(quotations omitted).

◼ By contrast, "equitable tolling is only appropriate in rare and exceptional circumstances," *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir.2003)(quotation omitted), and "is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, ... where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, ... or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion." *Id.* (quotations and citations omitted).[3] The first and third categories, defective pleading and incapacity, are not relevant to Kotec's opposition, and the second focuses on *unawareness* of a cause of action, *see also Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir.2002); *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir.1986), which obviously does not apply as Kotec filed a complaint in federal court alleging the CFEPA claims at issue here.

◼ As Judge Newman has observed, however, there is among federal circuit courts considerable variation in usage of the terms "equitable tolling" and "equitable estoppel." *See Pearl*, 296 F.3d at 81–82. Indeed, the Supreme Court has referred to classic examples of equitable estoppel as equitable tolling. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)(stating "We have allowed equitable tolling in situations ... where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," and citing as support *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)(tolling justified where defendant or agents told plaintiff he had seven years within which to bring an action against defendant and in reliance thereon plaintiff withheld suit)). While the absence of rigid formalism is not

---

**3.** "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass*, 333 F.3d at 80–81 (quotation omitted).

surprising given the equitable nature of both claims, Kotec's claim fits within the Second Circuit's doctrine of equitable estoppel and not equitable tolling and therefore the Court will apply the former.[4]

■ The maxim underlying equitable estoppel is that no litigant "may take advantage of his own wrong," *Glus*, 359 U.S. at 232, 79 S.Ct. 760, so that "where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage," *id.* at 234, 79 S.Ct. 760. Fact patterns supporting successful assertions of an equitable estoppel have involved a defendant's or his agents' affirmative misrepresentations as to the length of the limitations period, *see id.* at 232 n. 2, 79 S.Ct. 760, and defendant's attorney's incorrect and repeated insistence that plaintiff's cause of action was subject to the automatic stay provision of bankruptcy law and therefore could not be prosecuted, *see Bennett v. United States Lines, Inc.*, 64 F.3d 62, 65–66 (2d Cir.1995). Equitable estoppel principles have not saved untimely actions where induced delay did not justify the extent of plaintiff's subsequent slumber, *see Kavowras*, 328 F.3d at 56–57 (any inducement of delay in the third month of a six month statute of limitations did not justify plaintiff's ensuing sixteen

month delay in filing suit), or where communications could not properly be construed as a settlement offer, *see Cerbone*, 768 F.2d at 50 (offers of minor benefits could not have been mistaken by plaintiff and his attorney as settlement offers evincing intent to settle and lack of necessity to proceed with suit); *see also Dillman*, 784 F.2d at 60–61.

■ The facts alleged by Kotec do not approach demonstrating that Freeman lulled Mishkin into believing it was not necessary to serve Kotec's complaint until October 22, 2003, or much less that Mishkin acted reasonably in reliance thereon. The right to sue letter Kotec received from the CHRO on approximately April 29, 2003 unambiguously and explicitly stated that any action had to be brought within ninety days of that date, or approximately July 28, 2003.[5] On May 14, 2003, Freeman's letter requested that Mishkin serve on her a copy of any filing in the district court. On June 11, in response to Mishkin advising that Kotec's complaint would be filed in federal court in Connecticut where he would seek admission pro hac vice, Freeman told Mishkin to file Kotec's complaint and motion for admission and then serve her. Mishkin asks this Court to find in Freeman's statement a misrepresentation responsible for causing Mishkin reasonably to believe that Freeman would not raise a statute of limitations defense as a result of the subsequent lapse of 133 days before

---

4. Kotec assumes without objection from JEI that federal law regarding the application of "equitable tolling" applies here. *See* Opp'n [Doc. # 13] at 4–7 (citing only federal case law); *see* Reply [Doc. # 16] at 6–8 (citing federal case law and *Williams v. CHRO*, 67 Conn.App. 316, 786 A.2d 1283 (2001), which relied heavily on federal case law in considering application of equitable doctrines to an untimely filed employment discrimination compliant).

5. Notwithstanding Kotec's legal argument that Fed.R.Civ.P. 3 should determine commencement of the present suit for purposes of Conn. Gen.Stat. § 46a–101(e), Mishkin does not contend that he delayed serving Kotec's complaint based on a misunderstanding of the applicable legal rule.

Kotec's complaint was served. This the Court cannot do.

Freeman's statement is silent about applicable limitations periods, and, at the time of her representation, the applicable period was only half over. Nothing in Freeman's statement can be taken as a license for delay beyond the 90 day limitations period. There is nothing complicated or time-consuming about filing a motion for admission pro hac vice and it is routinely promptly granted by the Clerk where the requirements of D. Conn. L. Civ. R. 83.1(d)1 & 2 are satisfied. Mishkin's motion was granted by margin endorsement two days after filing. *See id.* Furthermore, the local rule explicitly directs that motions for admission pro hac vice "shall be made promptly..." and can be denied if granting the motion would require modification of deadlines or certain scheduling orders. D. Conn. L. Civ. R. 83.1(d)1. Mishkin does not claim that he was unaware of the local requirements or process. Rather, he informs the Court that he forwarded a copy of the requisite affidavit dated and signed June 24, 2003 to local counsel Wallman together with a copy of Kotec's complaint on July 1, 2003. Against the backdrop of the simple procedures for filing pro hac vice motions, Freeman's statement on day forty-three of the limitations period, similar to her letter to Mishkin on day sixteen, merely reiterates her amenability to accept service of Kotec's complaint. Mishkin satisfied the requirements for his part within three weeks of speaking with Freeman and well within the ninety day period; and, in an effort to demonstrate his own reasonable diligence, Mishkin stresses that he contacted Wallman several times beginning twenty-seven days prior to the expiration of the limitations period about the status of the pro hac vice motion. In sum, plaintiff's facts do not demonstrate any misrepresentation or one reasonably relied upon or any other basis for invoking an equitable estoppel.[6]

## III.  Conclusion

As set forth above, JEI's motion [Doc. # 9] is GRANTED.

IT IS SO ORDERED.

---

6.  The facts also do not demonstrate the elements required for equitable tolling. In this regard, it is notable that nothing precluded Wallman from serving Kotec's complaint on Freeman as she requested after he filed the complaint on July 8, 2003, and without having filed a pro hac vice admission motion for Mishkin.

The two cases in addition to *Glus* on which Kotec relies are not analogous to the present case. *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) allowed a case to proceed where the defendant was alleged to have fraudulently concealed his ownership of one hundred shares of stock, ownership being an essential element of the plaintiffs' cause of action. *See id.* at 397, 66 S.Ct. 582. On the facts of *Harris v. Walgreen's Distrib. Ctr.*, 456 F.2d 588 (6th Cir. 1972), the appellate court held the applicable limitations period tolled where a *pro se* plaintiff had filed for appointment of counsel in an unfair employment practices suit *before the running of the time for filing suit.* Kotec's cause of action was known long before and the pro hac vice motion was filed after the 90 day limitations period had run.