George W. WILDER, Appellant,

v.

UNITED MINE WORKERS OF AMERICA
and Welfare and Retirement Fund,
et al., Appellees.

Court of Appeals of Kentucky.

April 21, 1961.

Lester L. Parrott, Pineville, for appellant.

Lay & Knuckles, Pineville, for appellees.

MOREMEN, Judge.

Appellant, George W. Wilder, filed a complaint in the Bell Circuit Court by which he sought to obtain pension benefits from the United Mine Workers of America Welfare and Retirement Fund which will hereinafter be designated by the word "Fund." He named as defendants the Fund, itself; J. W. Ridings, President of District No. 19, United Mine Workers of America; and A. C. Barnes, who was averred to be the Regional Director of the Fund. Service of process was had upon Ridings and Barnes.

J. W. Ridings filed a motion to quash the return of service of summons and to dismiss the claim. At about the same time, John L. Lewis, Henry G. Schmidt and Josephine Roche—non-resident trustees of the Fund—appeared specially for the sole purpose of contesting the jurisdiction of the court to entertain or adjudicate matters pertaining to the administration of the Fund. They asked the court to set aside the service of process upon J. W. Ridings and A. C. Barnes insofar as such service might relate to or fix liability upon the Fund, and further to adjudge that it had no jurisdiction of the claim asserted by appellant Wilder. Affidavits and exhibits were filed, and the court, after a joint submission by the parties, held it had no jurisdiction over the Fund or its trustees and no jurisdiction over the subject matter upon which the complaint was based. The complaint was dismissed as to the Fund, its trustees and A. C. Barnes. By a subsequent judgment J. W. Ridings also was discharged. Wilder appeals.

The National Bituminous Coal Wage Agreement executed in Washington, D. C. on March 5, 1950 by various coal operators and the International Union, United Mine Workers of America, resolved many items of differences between them. One pertained to the Fund. The operators agreed to pay into this Fund the sum of thirty cents for each ton of coal produced for sale or use, and:

"Such Fund shall have its place of business in Washington, District of Columbia, and it shall be operated by a Board of Trustees, one of whom shall be appointed as representative of the employers, one of whom shall be appointed as representative of the United Mine Workers of America and one of whom shall be a neutral party, selected by the other two."

This is its nature:

"It is agreed that this Fund is an irrevocable trust created pursuant to Section 302(c) of the 'Labor-Management Relations Act, 1947,' and shall endure as long as the purposes for its creation shall exist."

The general purpose of Section 302 of the Act (29 U.S.C.A. § 186) was to prohibit employers from paying money or delivering other things of value to any representatives of their employees and thus to prevent kickbacks, bribery and other immoral practices (William Dunbar Company v. Painters & Glaziers Dist. Council No. 51, D.C., 129 F.Supp. 417) and preserve the integrity of labor-management relationship (United States v. Brennan, D. C., 134 F.Supp. 42). See also Arroyo v. United States, 359 U.S. 419, 79 S.Ct. 864, 3 L.Ed.2d 915, and United States v. Lavery, D.C., 161 F.Supp. 283.

The section does not preclude all payments. It is provided that payments may

be made into a trust fund established by the representative for the benefit of employees and their families for medical care, compensation for injuries, unemployment benefits, et cetera, but with this strict limitation as to pensions:

"And (c) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that funds held therein cannot be used for any purpose other than paying such pensions or annuities."

In Lewis v. Benedict Coal Corporation, 6 Cir., 259 F.2d 346, 355, it was held: "Though sui generis, union welfare funds created under the authority of 29 U.S.C.A. § 186(c), are similar in some respects to charitable trusts." The opinion was modified on other grounds by the Supreme Court. 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed. 2d 442.

■ The trial court found under sufficient evidence that the situs of the Fund is Washington, D. C., that the trustees of the Fund are not residents of the State of Kentucky, and that the Fund is administered by the trustees in Washington, D. C. where its offices and place of business are maintained. The court further found that all applications for benefits are made to the office in Washington and all payments of benefits are issued at and mailed from the Fund office in Washington.

In United Mine Workers of America, Local Union No. 5834, of Thealka, Kentucky v. Daniel, Ky., 317 S.W.2d 183, 184, it was held concerning this Fund, or a similar one, as follows:

"Since the situs of the retirement fund and its trustees is out of this jurisdiction, in Washington, D. C., this state has no jurisdiction to decide whether Mr. Daniel is entitled to retirement benefits."

■ The trial court was correct in concluding that the Fund is in fact a trust and not simply an association which might be properly served under C.R. 4.04(4).

■ In the affidavits filed it was proved that the assets of the Fund consisted solely of personal property or "movables." In Kitchen v. New York Trust Company, 292 Ky. 702, 168 S.W.2d 5, this court held that the administration of a trust whose situs was outside the State of Kentucky was vested solely in the courts at the situs, and accepted and approved Section 299 of Restatement, Conflict of Laws, which reads:

"The administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located."

This rule is based upon the sound principle that a trust which has beneficiaries located in our many states should not be subjected to possible diverse orders from the courts of any one of those states.

In Hobbs v. Lewis, 197 Tenn. 44, 270 S. W.2d 352, when considering a question involving this same Fund, the court concluded that it had no jurisdiction to entertain any suit for a purpose connected with the administration of the Fund.

In view of the foregoing it is unnecessary to discuss whether service upon Ridings and Barnes was valid insofar as it might be service of process upon the Fund. However, we will observe that Ridings was acting president of District 19, United Mine Workers of America, was not and never had been an employee of the trust fund which had never done business in Kentucky in the accepted sense of that phrase.

A. C. Barnes was area medical administrator of the Fund for the United Mine Workers of America and was paid from the general fund as distinguished from the pension fund under the terms of Section 302 of the Taft-Hartley Act of 1947.

■ Trusts may be created and payments made, as we have enumerated above, for several purposes but the payments under Section (c), quoted above, into the

pension fund are inviolate and no disbursement from that trust may be made for salaries or other purposes other than for pension benefits. In connection with the other trusts (medical care, unemployment benefits, et cetera) it seems that general funds as separate from trust funds may be created. Although the affidavits are not too certain in this regard, it is definite that Barnes' salary was paid out of the general funds and he was employed by some entity other than the Fund.

 The trial court correctly concluded that it lacked jurisdiction of the res and of the trustees and that service upon Barnes and Ridings was not service upon either of them.

Judgment affirmed.