**WOODFORD HEALTH CARE, INC., Plaintiff,**

v.

**BANK OF NEW YORK, as Trustee of the Margaret Voorhies Haggin Trust, and Attorney General Albert B. Chandler III, Defendants.**

No. CIV.A. 02–409–JMH.

United States District Court,
E.D. Kentucky,
Lexington.

Feb. 28, 2003.

Steven A. Brehm, John R. Cummins, Hiram Ely, Greenebaum, Doll & McDonald PLLC, Louisville, KY, Robert C. Stilz, Jr., Kinkead & Stilz, Lexington, KY, for Woodford Health Care, Inc.

Bruce F. Clark, Michele M. Whittington, Stites & Harbison, Frankfort, KY, for Bank of New York.

David Edward Spenard, Attorney General's Office, Frankfort, KY, for Albert B. Chandler, III.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on motion by defendant the Bank of New York (the "Bank") to dismiss [Record No. 11]. The Bank's motion is premised on the notion that this Court, a Kentucky federal court sitting in diversity, lacks jurisdiction over an inter vivos trust organized and administered under the laws of New York. For the reasons that follow, the Court disagrees. Accordingly, the Bank's motion shall be denied.

### Factual and Procedural Background

This suit involves a dispute over payments allegedly due plaintiff pursuant to the terms of the Margaret Voorhies Haggin Trust (the "Haggin Trust"), an inter vivos trust established in 1938 and organized and administered under the laws of the State of New York. The relevant provision requires the Haggin Trust to pay twenty percent (20%) of the Trust's annual net income to the Woodford County Memorial Hospital, located in Woodford County, Kentucky. From the date of its inception until 2000, 20% of the income of the Haggin Trust was paid to the Memorial Hospital in accordance with the Trust's

provisions. Since 2000, however, the Bank of New York (as trustee) has refused to make payment.

According to the Bank of New York, payments are no longer due because the Woodford County Memorial Hospital ceased operations. For its part, the Hospital claims that, while financial difficulties forced a corporate reorganization in April of 2000, it has continued to operate and is therefore entitled to continued payments.

After plaintiff filed suit in state court, the Bank of New York—alleging that its co-defendant, the Kentucky Attorney General, had been fraudulently joined—removed the suit to this Court on the basis of diversity. Plaintiff moved to remand, but the Court denied plaintiff's motion, agreeing that the Attorney General had been fraudulently joined and that, therefore, jurisdiction was proper under 28 U.S.C. § 1332. The Bank of New York then filed the instant motion.

## Discussion

Defendant's case in favor of dismissal is founded on the venerable yet ostensibly still-viable holdings of *Kitchen v. New York Trust Co.,* 292 Ky. 706, 168 S.W.2d 5 (1943), and *Wilder v. United Mine Workers of America,* 346 S.W.2d 27 (1961). Together, these cases stand for the proposition that suits respecting the administration of inter vivos trusts must be brought in the jurisdiction where the trust is administered. *Kitchen* and *Wilder,* both over four decades old, have never been expressly overruled.

Plaintiffs counter by noting the decision of the United States Court of Appeals for the Sixth Circuit in *Miller v. Davis,* 507 F.2d 308 (6th Cir.1974). In *Miller,* the question was the same as in the instant case: Do Kentucky federal courts have jurisdiction over trusts administered under the laws of foreign states? Taking issue with the district court's conclusion that the district court's "very jurisdiction as a federal court was circumscribed by Kentucky law," *id.* at 311, and finding the *Kitchen* and *Wilder* decisions to raise "serious implications concerning the power of the federal judiciary and the relationship of state and federal law," *id.,* the *Miller* court ultimately found that—because the state interests supporting the rule were weak and the federal interests supporting the exercise of federal jurisdiction were strong— the federal Rules of Decision Act, 28 U.S.C. § 1652, did not preclude federal jurisdiction. Relying on *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958), and *Hanna v. Plummer,* the court found Kentucky's Kitchen/Wilder rule to be procedural and found that "federal courts need not adopt state procedural rules which d[o] not have substantive import and which conflict[ ] with countervailing federal interests." *Miller,* 507 F.2d at 313. The *Miller* Court then proceeded to contrive an elaborate test to determine whether federal courts should apply state rules when they are enforcing rights created by state law. *Id.* at 314.

Defendant, however, takes a different view of *Miller,* and argues that subsequent United States Supreme Court case law has undermined—if not outright negated—its precedential value. Specifically, defendant points to the Supreme Court's decision in *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), wherein the Court clarified that such "balancing" is required only when state law and federal rule collide directly. Wrote the Court:

Application of the *Hanna* analysis is premised on a "direct collision" between the Federal Rule and the state law.... The first question [is] therefore whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the Court. It is only if that question is answered affirmatively that the *Hanna* analysis applies.

*Id.* at 749–750, 100 S.Ct. 1978 (citations omitted). *Walker* went on to note that such logic requires that, if there is "no Federal Rule which [covers] the point in dispute, *Erie* [commands] the enforcement of state law." *Id.* (referencing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

Upon review, the Court must concur with defendant's contention that the U.S. Supreme Court's decision in *Walker* seriously undermines that part of *Miller* respecting *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the Rules Enabling Act. Under *Walker,* because there is no federal rule in "direct collision" with the Kentucky state law, the state law controls. For the reasons that follow, however, defendant's victory (on this point) rings hollow.

Insofar as defendant argues that the Court must apply the state law of Kentucky in the instant case, the Court agrees. The Court disagrees, however, as to what precisely that state law is.

As outlined above, defendant would have the Court apply the archaic rule of *Kitchen* and *Wilder.* The Court must concede that these cases have not been expressed overruled. But defendant must in turn concede that both *Kitchen* and *Wilder* have been discredited, and that the reasoning of these cases has been recognized as antiquated. While a federal court sitting in diversity should not "make" state law, such a court must not shrink from its constitutional obligation to anticipate state-law changes.

It is none other than *Miller* itself that suggested—nearly thirty (30) years ago—that *Kitchen* and *Wilder* were no longer good law. While not reaching that issue, the Sixth Circuit in *Miller* discussed at length the "erosion of state policy against a non-resident trust's amenability to suit in Kentucky." *Miller,* 507 F.2d at 310 n. 2. Generally speaking, the Sixth Circuit an-

ticipated that the Kentucky Supreme Court would eventually overturn *Kitchen* and *Wilder* because: (1) both cases "derive[ ] from notions of in personam jurisdiction ... that no longer predominate," *Id.* at 314, and (2) "[t]hat part of the Kitchen–Wilder rationale which rests on notions of choice of law has been seriously undermined by recent developments." *Id.* at 315. With respect to the former reason, the court in *Miller* noted that since the 1961 *Wilder* decision, the Kentucky legislature has passed a long-arm personal jurisdiction statute. KRS § 454.210. The court noted that, in light of the new statute, "[t]hat part of the Kitchen–Wilder rationale which rests on a restrictive view of personal jurisdiction must be revised to account for its present broad availability." *Id.* As for the second reason, the court noted that "[t]he former Restatement view invoked by the Kitchen and Wilder courts (that trusts should be suable only in the courts of the jurisdiction in which they are situated) has been changed so as to favor Kentucky jurisdiction over [such claims]." *Id.* The court went on to note that "[t]he modern [Second] Restatement rule has led to an abandonment of the Wilder [First Restatement] view in several jurisdictions," and that "the old Restatement rule has lost much of its justification since other jurisdictions have chosen not to abide by it." *Id.* at 316 (citations omitted). Most persuasive of all, the Sixth Circuit explained how that result *must* obtain, because—were the law otherwise—an "inequitable situation arises." *Id.* The concern in this regard is that, were the Kentucky court to cling to the rule of Kitchen/Wilder, Kentucky beneficiaries of non-resident inter vivos trusts would not be able to sue in their home-state courts, while beneficiaries from other states—Tennessee, for example—would be so able. In effect, "Kentucky would be adhering to a system that handicaps its own residents while not preventing out-of-state beneficiaries of Ken-

tucky-situated trusts from suing in the beneficiaries' home courts." *Id.* at 317. All told, the case against *Kitchen* and *Wilder* is overwhelming, and the Court does not perceive its decision to declare the rule of these cases no longer valid to constitute a trespass on the territory of the Kentucky state courts. The Court is confident that it is merely doing what the Kentucky courts would themselves do if confronted with the question.[1]

In this regard, it has not escaped the Court's attention that, in virtually every instance, litigants may employ procedural maneuvering to prevent the Kentucky courts from revisiting *Kitchen* and *Wilder,* a possibility the Court finds troublesome. The difficulty arises from the fact that, as in the instant suit, Kentucky trust beneficiaries and non-Kentucky trusts are by definition diverse. The result is that normally (and as is the case in the instant suit) the beneficiary's suit is removable. Removal, however, prevents a Kentucky court from overturning *Kitchen* and *Wilder.* Such a procedural conundrum may well explain why *Kitchen* and *Wilder* have survived for as long as they have.

Finally, the Court notes that its decision in no way raises questions of comity. The case law is replete with instances of foreign jurisdictions exercising jurisdiction over Kentucky trusts. *See, e.g., In re Estate of McMillian,* 603 So.2d 685 (Fla. Dist.Ct.App.1992).

### Conclusion

Insofar as defendant has argued that the absence of any federal rule in "direct collision" with Kentucky law means that Kentucky law is controlling, defendant is correct. The relevant Kentucky law is the rule as expressed in *Kitchen* and *Wilder.*

The Court predicts, however, that—were the Kentucky courts afforded the opportunity—these cases would be overturned. The bottom line is that, for the reasons as outlined by the Sixth Circuit in *Miller,* Kentucky courts *may* exercise jurisdiction over trusts organized and administered under the laws of another state.

Accordingly,

**IT IS ORDERED**

(1) That defendant's motion to dismiss [Record No. 11] be, and the same hereby is, **DENIED**; and

(2) That plaintiff's motion to file a surreply [Record No. 15] be, and the same hereby is, **DENIED**.

---

1. In pronouncing the death of *Kitchen* and *Wilder,* the Court in effect adopts Judge McCree's concurrence in *Miller. Id.* at 318 ("I believe that the [Kentucky Supreme Court] ... would, in light of the recent enactment of a Kentucky 'long arm' statute, decide the issue presented here as [the Sixth Circuit] determined Tennessee would after enacting its 'long arm' statute.") (citation omitted).