# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2021

Lyle W. Cayce
Clerk

No. 19-30316

David Franco,

*Plaintiff—Appellant*,

*versus*

Mabe Trucking Company, Incorporated; Richard Agee;
National Interstate Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-871

Before King, Jones, and Dennis, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

David Franco sued Mabe Trucking Co. ("Mabe") in the United States District Court for the Eastern District of Texas after Franco's car accident with a truck owned by Mabe and operated by a Mabe employee. The car-truck mishap had occurred in Louisiana a few miles from its border with Texas. The Texas federal district court concluded that Mabe lacked sufficient contacts with Texas to subject the company to personal jurisdiction in the state. However, the court found that it was in the interests of justice not to dismiss the case and instead transferred it to the United States District

Court for the Western District of Louisiana, the federal district court sitting in the district in which the accident occurred. But the Louisiana federal district court concluded that Franco's claims were untimely and granted summary judgment for Mabe. For the following reasons, we REVERSE and REMAND.

## I.

On November 24, 2015, Franco was involved in a vehicular accident with a truck owned by Mabe and operated by Mabe's employee. The accident occurred in Louisiana, three miles from the Texas border. Franco filed suit against Mabe in the Eastern District of Texas on November 22, 2016, two days before the one-year anniversary of the accident, and Franco served Mabe on January 20, 2017. Finding that it lacked personal jurisdiction over Mabe due to Mabe's lack of significant contacts with Texas, the Texas federal district court transferred the case to the Western District of Louisiana, which would likely have possessed specific jurisdiction under the Louisiana long-arm statute to try claims against Mabe related to the accident because the court sat within the district in which the accident occurred.[1] *See*

---

[1] Federal Rule of Civil Procedure 4(k)(1)(a) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." The Louisiana long-arm statute establishes the jurisdiction of Louisiana courts over nonresidents, and it provides, as relevant here:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> . . . .
>
> (3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (noting that a court's exercising specific jurisdiction over an out-of-state defendant is constitutional when a suit arises out of the defendant's contacts with the forum state). The Texas district court magistrate judge explained: "Because the Court lacks personal jurisdiction over [Mabe], and hence venue under § 1391(b)(1) is improper, the Court finds it suitable in the 'interests of justice' to transfer the case to the Western District of Louisiana, the district where the accident occurred. *See* 28 U.S.C. § 1406(a)."[2]

Mabe moved for summary judgment in the Louisiana district court, arguing that Franco's claims had prescribed under Louisiana law.[3] *See* LA. CIV. CODE arts. 3492, 3462. Louisiana Civil Code Article 3492 establishes a one-year prescriptive period for delictual actions like the one Franco brought against Mabe. Article 3462 provides that prescription is interrupted when a party files suit "in a court of competent jurisdiction and venue"; if a party files suit in a court of incompetent jurisdiction or improper venue, however, prescription is interrupted "only as to a defendant served by process within the prescriptive period." LA. CIV. CODE art. 3462. Mabe argued that Franco's claims were prescribed because he filed suit in the

---

LA. STAT. ANN. § 13:3201. Ultimately, however, we need not further examine whether a Louisiana court of general jurisdiction—and thus, pursuant to Rule 4(k)(1)(a), the Louisiana federal district court—would have had personal jurisdiction over Mabe had Mabe not consented because Mabe does not challenge it and, unlike with subject-matter jurisdiction, objections to personal jurisdiction may be waived. *Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 568 (5th Cir. 1991).

[2] Neither party disputes the Texas federal district court's determination that, under federal law, the Eastern District of Texas was an improper venue without personal jurisdiction over Mabe.

[3] Federal courts apply Louisiana prescription law to diversity actions which Louisiana law governs, as "state statutes of limitations are considered substantive for purposes of *Erie* analysis." *Vincent v. A.C. & S., Inc.*, 833 F.2d 553, 555 (5th Cir. 1987).

Texas district court, which was an incompetent court, and failed to serve Mabe within the one-year prescriptive period.

The Western District of Louisiana court initially denied Mabe's motion, concluding that 28 U.S.C. § 1631 rendered Franco's claims timely. Under § 1631, when a federal "court finds that there is a want of jurisdiction" and that a transfer would be "in the interest of justice," "the court . . . shall transfer" the action to another court "in which the action could have been brought" and the transferred action "shall proceed as if it had been filed in . . . the court to which it was transferred . . . on the date it was actually filed in . . . the court from which it was transferred." The Louisiana district court concluded that the transfer from the Texas district court was a § 1631 transfer in "all but name," and therefore the case must be treated "as if" it had been filed in the Western District of Louisiana on November 22, 2016, which is within Louisiana's one-year prescriptive period.

On Mabe's motion for reconsideration, however, a different presiding judge of the Louisiana district court reversed the ruling. The court reasoned that § 1631 was not intended to govern prescription and that Article 3462 is a substantive Louisiana law that controlled the diversity action under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, (1938). The court therefore concluded that Franco's claims were prescribed, entered judgment for Mabe, and dismissed Franco's claims with prejudice. This appeal followed.

## II.

We must first determine whether the Western District of Louisiana properly applied § 1631 to the transferred case. The Eastern District of Texas cited only § 1406(a) when it transferred the case. If the transfer was governed by only § 1406(a) and not § 1631, then § 1631's interaction with Louisiana's prescriptive period is not at issue here. If the case was

transferred in accordance with § 1631, however, we must next evaluate § 1631's interaction with Louisiana law to determine whether the Louisiana federal district court properly granted Mabe summary judgment on the basis that Franco's claims are prescribed. We review a district court's grant of summary judgment and issues of statutory interpretation *de novo*. *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018); *In re Glenn*, 900 F.3d 187, 189 (5th Cir. 2018).

## A.

### 1.

We begin by addressing whether § 1631 is relevant when a district court determines that there is a lack of personal, as opposed to subject-matter, jurisdiction and the interests of justice demand transfer. Mabe argues that § 1631 applies only when a court lacks subject-matter jurisdiction. Our court has not yet had occasion to decide this question. *See Bentz v. Recile*, 778 F.2d 1026, 1028 n.5 (5th Cir. 1985) (noting the issue but explaining that we need not reach it). If Mabe is correct, there is no need for us to address further whether § 1631 applies to this transfer, for it is undisputed that the Eastern District of Texas possessed subject-matter jurisdiction over Franco's claim. *See* 28 U.S.C. § 1332(a) (granting district courts original diversity jurisdiction).

"The task of statutory interpretation begins and, if possible, ends with the language of the statute." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013). "When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.'" *Id.* (quoting *In re Nowlin*, 576 F.3d 258, 261-62 (5th Cir. 2009)); *see also BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means

in a statute what it says there.'" (alteration omitted) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992))).

Section 1631 states:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed . . ., and the action or appeal shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

28 U.S.C. § 1631.

The text does not confine itself to personal or subject-matter jurisdiction, but instead "a want of jurisdiction" generally. Black's Law Dictionary defines "want of jurisdiction" to encompass a lack of subject-matter jurisdiction or a lack of personal jurisdiction. *See* WANT OF JURISDICTION, Black's Law Dictionary (11th ed. 2019) ("A court's lack of power to act in a particular way or to give certain kinds of relief. A court . . . may lack authority over a person or the subject matter of a lawsuit . . . ."). The entry for "jurisdiction" also includes sub-entries for both subject-matter jurisdiction ("Jurisdiction over the nature of the case and the type of relief sought") and personal jurisdiction ("A court's power to bring a person into its adjudicative process"). *See* JURISDICTION, Black's Law Dictionary (11th ed. 2019). Moreover, Congress used "subject-matter jurisdiction" elsewhere in Title 28 and could have similarly restricted § 1631's ambit if it so wished. *See, e.g.*, 28 U.S.C. § 1390(a) ("[T]he term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general."); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) (explaining

that when legislators did not adopt "obvious alternative" language, "the natural implication is that they did not intend" the alternative). Accordingly, the plain text of § 1631 indicates that it may apply when a district court finds that it lacks subject-matter jurisdiction, personal jurisdiction, or both.

The historical context of § 1631's enactment also suggests that it was intended to address situations in which a court lacks personal jurisdiction but transfer rather than dismissal is in the interest of justice. Until 1948, courts had no statutory transfer authority; a dismissal without prejudice was their only clear recourse when a case was filed in an incorrect or inconvenient forum, which often worked an injustice on plaintiffs who were time-barred from refiling. *See Ellis v. Great S.W. Corp.*, 646 F.2d 1099, 1104 (5th Cir. 1981); Jeremy Jay Butler, *Venue Transfer When A Court Lacks Personal Jurisdiction: Where Are Courts Going with 28 U.S.C. § 1631?*, 40 Val. U. L. Rev. 789, 843 & n.50 (2006). To address this issue, Congress enacted 28 U.S.C. § 1404(a), which authorized a discretionary transfer when venue was proper but another venue was more convenient, and § 1406(a), which required a transfer when venue was improper but justice nonetheless weighed in favor of transfer to a proper venue rather than dismissal. *Transfer in the Federal Courts in the Absence of Personal Jurisdiction*, 61 Colum. L. Rev. 902, 902 (1961). The distinction between the two provisions had important consequences for the outcomes of cases because the transferor court's choice-of-law rule applied following a § 1404(a) transfer, but the transferee court's choice-of-law rule applied after a § 1406(a) transfer.[4] *See* Butler, *supra*, at 799-803.

---

[4] Under *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941), a district court must generally apply the choice-of-law approach of the state in which it sits. However, if this rule were applied to require a transferee court to apply the law of the state in which it sits following a transfer under § 1404(a), a defendant could alter the outcome of a properly

Courts were divided over whether personal jurisdiction over a defendant was required before a transfer could occur under these statutes until the Supreme Court ruled in *Goldlawr v. Heiman*, 369 U.S. 463, 466 (1962), that it was not—at least with respect to a § 1406(a) transfer. The Court reasoned that the § 1406(a) was intended to "remov[e] whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits," so that plaintiffs would not be penalized by "'time-consuming and justice-defeating technicalities.'" *Id.* at 466-67 (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). Accordingly, the Court held that Congress had made "[t]he language of [§ ]1406(a) . . . amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Id.* at 466.

Despite the Court's best efforts, *Goldlawr* raised more questions than it answered, and an at-least-three-way circuit split arose over whether § 1404(a) or § 1406(a) applied to a transfer conducted without personal jurisdiction where venue was otherwise proper, as well as which choice-of-law rule courts should use following such a transfer—the transferor court's or the transferee court's. *See Ellis*, 646 F.2d at 1104-09 (collecting cases). It

---

filed case by strategically transferring it to a venue in a state where the plaintiff's claim would fail. Accordingly, the Supreme Court has held that courts must apply the *transferor* court's choice-of-law rule following a § 1404(a) transfer. *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Ferens v. John Deere Co.*, 494 U.S. 516 (1990). Conversely, if the same standard were applied to § 1406(a) transfers that occur after suits are filed in improper venues, a plaintiff could forum-shop to find the most favorable law for a claim without regard to venue, secure in the knowledge that the law would follow the case when it is transferred to the venue where the claim should have been brought in the first place. Courts have thus held that the choice-of-law rule of the *transferee* court applies following a § 1406(a) transfer. *See Ellis*, 646 F.2d at 1109-10; Butler, *supra*, at 803 n.73 (collecting cases).

was against this backdrop that, only a year after our court described the state of no-personal-jurisdiction federal transfer law as a "nearly hopeless muddle of conflicting reasoning and precedent," *id.* at 1106, Congress enacted § 1631 as part of the Federal Courts Improvement Act of 1982, Pub. L. 97-164 § 301(a), 96 Stat 25 (1982). The law appears to be intended to avoid the confusion that was created by §§ 1404(a) and 1406(a)'s focus on whether venue was proper, instead stating that a district court shall transfer the case if there is a lack of jurisdiction and justice so demands regardless of the propriety of the original venue. And the statute seems to be aimed in part at resolving the choice-of-law question that was dividing courts in transferred cases where personal jurisdiction was initially lacking, specifically providing that, following such a transfer, "the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred." *Id.* Thus, the context of its enactment suggests § 1631 was intended to embrace transfers performed in the absence of not just subject matter jurisdiction, but personal jurisdiction as well.

The decisions of our sister circuits further confirm that the term "jurisdiction" in § 1631 encompasses both personal and subject-matter jurisdiction: The First and Sixth Circuits so held after squarely confronting the question. *See Fed. Home Loan Bank of Bos. v. Moody's Corp.*, 821 F.3d 102, 114 (1st Cir. 2016), *abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553 (2017); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003). The Ninth, Tenth, and Eleventh Circuits have implicitly reached the same conclusion by either applying § 1631 to a transfer to cure a defect in personal jurisdiction, directing a district court to consider utilizing the provision to rectify a lack of personal jurisdiction, or approving such a transfer after it occurred. *See Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 761-62 (9th Cir. 1990) (vacating and remanding to district court to consider transfer under § 1631 to cure lack of personal jurisdiction); *Ross v.*

*Colorado Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527-28 (10th Cir. 1987) (reviewing case that was transferred under § 1631 to Colorado district court after New York district court found it lacked personal jurisdiction). And the Third and Eight Circuits have stated in *dicta* that a § 1631 transfer would be proper to cure a lack of personal jurisdiction. *Johnson v. Woodcock*, 444 F.3d 953, 954 n.2 (8th Cir. 2006) (explaining district court could have transferred action under § 1631 to cure lack of personal jurisdiction); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (explaining district court would have had authority to transfer action under § 1631 after finding it lacked personal jurisdiction). In fact, though a noted treatise cites the statute's legislative history in counseling for limiting § 1631 to subject-matter jurisdiction and further states that courts "are rather evenly divided on the subject," *see* Wright & Miller, Relation to Other Transfer Provisions, 15 Fed. Prac. & Proc. Juris. § 3842 (4th ed.), our research indicates that only some district courts—and no circuit courts—have actually adopted the view that § 1631 does not apply to a transfer to cure a lack of personal jurisdiction. *See, e.g., McTyre v. Broward Gen. Med. Ctr.*, 749 F. Supp. 102, 105 (D.N.J. 1990); *Levy v. Pyramid Co. of Ithaca*, 687 F. Supp. 48, 51 (N.D.N.Y. 1988); *Nose v. Rementer*, 610 F. Supp. 191, 192 n.1 (D. Del. 1985); *c.f. Piazza v. Upjohn Co.*, 570 F. Supp. 5, 8 (M.D. La. 1983) (concluding that § 1631 applied to a transfer when a state court case was removed to the wrong district court because "nothing in the language of the statute, its legislative history or the cases cited . . . indicate[s] that the Congress intended such a restrictive construction of remedial legislation").

Thus, it appears no circuit split currently exists on this issue,[5] and while we cannot predict how those circuits who have left the question open will ultimately resolve the matter, we decline to now create a split by adopting an overly restrictive reading of § 1631. Because no amount of legislative history can defeat unambiguous statutory text, *Bostock v. Clayton County*, 140 S. Ct. 1731, 1750 (2020), we join the weight of circuit authority and conclude that the use of the term "jurisdiction" in § 1631 encompasses both subject-matter and personal jurisdiction. The statute therefore requires a transfer when a district court lacks either type of jurisdiction and the other statutory prerequisites are met.

**2.**

Because § 1631 required the Texas district court to transfer this case to the Louisiana district court for lack of personal jurisdiction, we next must determine whether the Texas district court in fact did so. In transferring the case to the Louisiana district court, the Texas district court explained: "Because the Court lacks personal jurisdiction over Mabe, and hence venue under § 1391(b)(1) is improper, the Court finds it suitable in the 'interests of justice' to transfer the case to the Western District of Louisiana, the district where the accident occurred." The court cited only 28 U.S.C. § 1406(a) in support of this order. In its initial order denying Mabe's motion for summary judgment and concluding that Franco's claim was timely, the Louisiana district court stated that "[w]hile [the magistrate judge] did not mention Section 1631 when he transferred the proceeding to this Court, he did find a

---

[5] The Fourth and Seventh Circuits have noted but declined to decide the issue, *In re Carefirst of Md., Inc.*, 305 F.3d 253, 257 n.2 (4th Cir. 2002); *Carpenter-Lenski v. Ramsey*, 2000 WL 287651, at *2 (7th Cir. Mar. 14, 2000); and the Second Circuit has stated in *dictum* that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction." *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000).

want of personal jurisdiction and that the interests of justice warranted the transfer." The court concluded, therefore, that the magistrate judge in the Texas district court "ordered a Section 1631 transfer in all but name."

We have previously approved of a district court's use of § 1406(a) to transfer a case when it lacks personal jurisdiction over a defendant. *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013) ("Where a court finds it lacks personal jurisdiction, it . . . is authorized under 28 U.S.C. § 1406(a) to transfer the action."). The question, then, is whether this holding means that § 1631 does *not* apply to such a transfer, at least when it is not specifically invoked by the transferor court. Ultimately, we agree with the Louisiana district court that § 1631's provisions apply to the transferred case because the statute establishes a mandatory duty when it is triggered that is not "contradictory or mutually exclusive" of the duty triggered by § 1406(a). *Harutyunyan v. Love*, No. CV 19-41, 2019 WL 5551901, at *6 (E.D. La. Oct. 28, 2019).

That § 1631 and § 1406(a) can function together rather than as alternative avenues for transfer is apparent from the plain text of the two statutes. Both § 1631 and § 1406(a) use the mandatory "shall . . . transfer" language, indicating that they both establish a mandatory duty for a court to transfer a case when their respective requirements are met. *Compare* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district *shall* . . . if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added)), *with* 28 U.S.C. § 1631 ("Whenever . . . there is a want of jurisdiction, the court *shall*, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought[.]" (emphasis added)). When, as in this case, there is both a lack of jurisdiction and a lack of proper venue and the interests of justice weigh in favor of transfer rather than dismissal, the plain

language of the statutes indicate that a district court can—indeed, must—satisfy its obligations under both statutes through a single use of the transfer power. It is not an either/or question. In fact, were § 1406(a) and § 1631 mutually exclusive options, where a court could use only one or the other to perform a transfer, it would be impossible for a court to comply with both statutes in a case like the present one where the triggering conditions for both statutes are present. Because both statutes are mandatory when their respective preconditions are met, a court would necessarily violate one statute or the other if it could only perform a "§ 1406(a) transfer" or a "§ 1631 transfer" but not both. Further, because § 1631's requirement about what choice-of-law rule to apply after the transfer is entirely consistent with our court's interpretation of § 1406(a), *see Ellis*, 646 F.2d at 1109-10, there is no risk that courts will ever be subject to conflicting obligations from both statutory mandates' applying in the same case. Both statutes instruct the court to do the same thing, so there is no reason to choose between the two. A transfer conducted in these circumstances is not solely a § 1406(a) transfer or a § 1631 transfer. It is both. *See Harutyunyan*, 2019 WL 5551901, at *3-6.

In light of § 1631's mandatory language, our sister circuits have applied the statute to transfers even when the parties did not move under § 1631 and where, as here, the transferring court did not mention § 1631 in its transfer orders. *See, e.g., Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) ("Although Miller did not move the district court to transfer the case, we have held that a motion to transfer is unnecessary because of the mandatory cast of section 1631's instructions." (internal quotation marks, citations, and alteration omitted)); *Ross*, 822 F.2d at 1527 (10th Cir. 1987) (stating that, where district court lacked personal jurisdiction over the defendant, "[t]he correct course. . . was to transfer the action pursuant to [§ 1631]"); *see also Harutyunyan*, 2019 WL 5551901, at *3-6 (analyzing transfer under § 1631, though district court cited only § 1406, because of

13

§ 1631's compulsory language and because "[i]t [was] clear the [transferring c]ourt considered the interests of justice"). Here, the Eastern District of Texas concluded that it lacked jurisdiction over Mabe and that the transfer was in the interests of justice. Therefore, the provisions of § 1631 apply irrespective of the Texas district court's invoking only § 1406(a).

**B.**

Finally, we evaluate whether the Louisiana district court, in its second ruling, properly granted summary judgment to Mabe on the basis that Franco's claim was prescribed. The answer to this question turns entirely on the interplay between 28 U.S.C. § 1631 and Louisiana's prescription provisions.

Under Louisiana law, delictual actions prescribe one year "from the day injury or damage is sustained." LA. CIV. CODE art. 3492. Prescription is interrupted when the plaintiff "commences action . . . in a court of competent jurisdiction and venue." *Id.* art. 3462. A plaintiff who files in an incompetent court or in an improper venue, however, receives the benefit of interruption only where he or she serves the defendant within the prescriptive period. *Id.*

However, after § 1631 requires a court to "transfer [an] action . . . to [a] court . . . in which the action . . . could have been brought at the time it was filed or noticed[,]" the statute states that "the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631 (emphasis added). Section 1631, then, specifies that, after a § 1631 transfer, the suit is treated "as if" it had been commenced *in the receiving court* and not the transferor court on the day it was originally filed in the transferor court. Thus, if § 1631 applies, Franco's claim must be treated as if it was filed in the Louisiana federal district court for the Western

District—a court of competent jurisdiction—on the day he filed the claim in the Texas district court. Because that day was within the one-year prescription period provided by Louisiana Civil Code Article 3492, prescription will have been interrupted under Louisiana Civil Code Article 3462, rendering Franco's claim timely.

Mabe argues on appeal that § 1631 is in direct conflict with Louisiana Civil Code Article 3462 and that Article 3462 must prevail under the *Erie* doctrine because it is a substantive Louisiana law. We do not agree that *Erie* requires that result. As the Supreme Court has observed, applying *Erie* "is sometimes a challenging endeavor." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996). But we need not wade deeply into the murky *Erie* waters to determine that the doctrine of that case does not interfere with a straightforward application of § 1631 and the Louisiana Civil Code articles.

First, the statute on which the Erie decision was in-part based, the Rules of Decision Act, provides that "[t]he laws of the several states, *except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide*, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652 (emphasis added). Interpreting this statute, the Court in *Erie* declared that "[t]here is no federal general common law." 304 U.S. at 78 (emphasis added). Thus, the *Erie* analysis is confined to the kind of judge-made federal practices that might arguably be characterized as common law—practices that have no source in a federal rule or statute. *See Hanna*, 380 U.S. at 469-70 (1965) (stating that the respondent in that case was incorrect to assume "that the rule of *Erie R. Co. v. Tompkins* constitute[d] the appropriate test" because there existed an on-point federal rule that directly controlled the matter at issue). For example, in *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 111–12 (1945), the Court held that *Erie* mandated that federal courts apply state statutes of limitations to state-law claims heard pursuant to the

courts' diversity jurisdiction and not the federal courts' own *ad hoc* notions of equitable timeliness. And in *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 430 (1996), the Court determined that *Erie* required that a federal court hearing a claim based in New York law apply New York's "deviates materially" standard when determining whether a jury verdict is excessive as opposed to the traditional federal "shocks the conscious" standard, which is wholly judge-made and not rooted in any federal rule or statute.

The *Erie* doctrine is not implicated when a valid federal rule or statute directly governs the matter at issue. *See Hanna*, 380 U.S. at 470 ("The Erie rule has never been invoked to void a Federal Rule."); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 198 (1988) ("Although state law generally supplies the rules of decision in federal diversity cases, it does not control the resolution of issues governed by federal statute." (internal citation omitted)); *see also* John Hart Ely, *The Irrepressible Myth of Erie,* 87 Harv. L. Rev. 693, 698 (1974). When a valid federal rule or statute is directly controlling, it must be applied, for it preempts any contrary state law, rule, or practice under the normal operation of the Supremacy Clause.[6] *Budinich*, 486 U.S. at 198.

---

[6] Although the *Erie* doctrine is intended to reduce the "'inequitable administration' of the law" by limiting the scenarios in which the outcome of a case will vary based on whether the suit is heard in state or federal court, *Walker*, 446 U.S. at 753 (quoting *Hanna*, 380 U.S. at 468), this does not obviate federal courts' obligation to apply valid, on-point federal law. "*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna*, 380 U.S. at 473. "When, because the plaintiff happens to be a non-resident, [a state] right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." *Id.* (quoting *York*, 326 U.S. at 108). Thus, that Franco's claim would have been handled differently had it been brought in an incorrect Louisiana state court rather than an incorrect federal court is not a reason to decline to apply § 1631.

Instead of the *Erie* analysis, the only questions regarding § 1631's applicability are the same questions present in any case involving a federal statute: (1) whether § 1631 falls within the grant of "federal authority contained in Article I" or another portion of the Constitution, *Hanna*, 380 U.S. at 471, and (2) whether "the scope of the [statute] in fact is sufficiently broad to control the issue before the Court."[7] *Walker*, 446 U.S. at 749–50. As to the first question, Mabe does not argue that § 1631 is unconstitutional, and for good reason. There is little doubt that § 1631 falls within Congress's authority to prescribe rules for the operation of federal courts. *See Hanna*, 380 U.S. at 472 ("[T]he constitutional provision for a federal court system (augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either."); *Budinich*, 486 U.S. at 199 (holding "enactments 'rationally capable of classification' as procedural rules are necessary and proper for carrying into execution the power to establish federal courts vested in Congress by Article III, § 1" (quoting *Hana*, 380 U.S. at 472)).

As to the second question, the plain language of the statute governs when and where Franco's claim must be considered to have been filed. To regard Franco's action as filed on any date other than the day it was filed in

---

[7] Because § 1631 is a statute enacted by Congress and not a procedural rule promulgated by the Supreme Court pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, we need not address whether it complies with the statutory limits set by Congress in the Rules Enabling Act. *See Hana*, 380 U.S. at 463-64 (considering whether a Federal Rule of Civil Procedure exceeded the authority delegated to the Supreme Court under the Rules Enabling Act by "abridg[ing], enlarg[ing,] or modify[ing] any substantive right" (quoting 28 U.S.C. § 2072)).

the Texas district court would be to ignore § 1631's directive that the date of filing shall be fixed as "the date upon which it was actually filed in . . . the court from which it is transferred." And to treat Franco's claim as if it were filed in an incompetent court would be to write out § 1631's mandate that "the action or appeal shall proceed as if it had been filed in . . . the court to which it is transferred." To omit either § 1631's date-of-filing, place-of-filing, or manner of proceeding clauses from our reading of the statute would be contrary to the fundamental rules that "'we must construe statutes so as to give meaning to all terms,' and 'we cannot accept' a construction that renders statutory text 'mere surplusage.'" *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 264 (5th Cir. 2014) (quoting *In re McBryde*, 120 F.3d 519, 525 (5th Cir.1997)).

We accordingly conclude that § 1631, which was specifically designed to protect federal litigants from the forfeiture that could result from a statute of limitations running after a plaintiff's mistakenly filing an action in a court that lacks jurisdiction when the interests of justice so demand,[8] *see Hempstead Cty. & Nevada Cty. Project v. E.P.A.*, 700 F.2d 459, 462-63 & n.4 (8th Cir. 1983) (citing S. Rep. No. 97-275 (1982)), neither runs afoul of the *Erie*

---

[8] This is not a case in which the plaintiff's initial filing in an incompetent court was after the prescriptive period had already run. That was the scenario presented in *Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 988 (5th Cir. 1989), in which we observed "that Congress [did not] intend[] that the defendant in every transferred case be deprived of all statute of limitations defenses." As we noted there, "the curative effects of § . . . 1631 were intended to apply only in those circumstances where the action would have been timely filed in the transferee court at the time of filing in the transferor court." *Id.* Franco satisfies this requirement because, had Franco initially filed his suit in the correct court, prescription on his claim would have unquestionably been interrupted under Louisiana Civil Code articles 3462 and his claim would have been indisputably timely under article 3492. Nor is there any suggestion that Franco's misfiling was in bad faith. The benefits of § 1631 are available only when the transferor court determines that it is "in the interest of justice" to transfer the case rather than dismiss it, and the transferor court's discretion serves as a guard against the provision being abused to unfairly prejudice a defendant.

doctrine and the Rules of Decision Act it effectuates nor transgresses constitutional bounds. Section 1631 is therefore the standard against which the District Court for the Western District of Louisiana should have measured whether the action had been timely filed in that court, and its application must necessarily precede that of the Louisiana Civil Code articles.

With this conclusion established, it is clear that Mabe is incorrect to contend that a "direct conflict" exists between § 1631 and Louisiana Civil Code Articles 3462 and 3492. Section 1631 determines when and where a transferred suit is deemed to have been filed, and neither Article 3462 nor Article 3492 says anything about when and where a case should be considered filed. Instead, the Louisiana Civil Code Articles only instruct a court to *look to* when and where a case was filed—the matters set by § 1631—to determine if the case is timely. In this case, for instance, § 1631 dictates that the case must be treated as if it were commenced in the United States District Court for the Western District of Louisiana on November 22, 2016. Louisiana Civil Code Article 3642 then governs whether, based upon the action being commenced in the Western District of Louisiana on November 22, 2016, prescription was interrupted. Because the Western District of Louisiana is "a court of competent jurisdiction and venue" for this case, Louisiana Civil Code Article 3462 provides that prescription was interrupted on that date. Lastly, Louisiana Civil Code Article 3492 controls whether this interruption of prescription—on November 22, 2016—fell within the prescriptive period for the type of action Franco asserts. Because November 22, 2016, the date Franco is deemed to have filed under § 1631 and the date prescription was interrupted under Article 3462, is less than a year after November 24, 2015, the date Franco allegedly suffered the injury that is the basis of the action, Article 3492 provides that Franco's claim is timely. By force of the Supremacy Clause, federal courts are bound to see that an action transferred

under § 1631 shall proceed as if it had been filed according to the terms of that section, and nothing prevents a court from then giving full force to the Louisiana Civil Code Articles to determine whether the case is timely.[9]

In sum, § 1631 is an on-point federal statute that does not conflict with the Louisiana Civil Code Articles and that would preempt any contrary Louisiana law, rule, or practice under the Supremacy Clause, and the *Erie* doctrine provides no reason to avoid the statute's application.[10] That statute

---

[9] Indeed, the Western District of Louisiana concluded that § 1631 and Louisiana Civil Code Articles 3462 and 3492 do not conflict in its second ruling when it determined that Franco's claim is time-barred. Citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1978), the court stated that no conflict exists between § 1631 and the Louisiana Civil Code articles. However, the district court then proceeded to completely disregard part of § 1631, failing to treat the case as if it were originally filed in the Western District of Louisiana when applying the Louisiana Civil Code articles. By doing so, the district court misapprehended the central lesson of *Walker*: when no conflict exists between the identified state law and a federal rule or statute, there is no reason not to apply both the federal and state laws in diversity cases. *Id.* at 747 ("[I]n the absence of a[n identified] conflicting state procedure, the Federal Rule would plainly control . . . ." (citing *Hanna*, 380 U.S. at 465)); *Id.* at 753 (stating "[t]here is simply no reason why, in the absence of a controlling federal rule," the state rule should not be applied); *see also id.* at 752 (stating that the federal and state laws "can exist side by side, therefore, each controlling its own intended sphere of coverage without conflict.").

[10] Our conclusion that § 1631 must set the applicable date and place of filing is confirmed by the decisions of other courts faced with the same question. The Tenth Circuit addressed this issue in examining the interaction between § 1631 and Colorado's statute of limitations, explaining that under § 1631, the transferee court "must accept the date on which th[e] action was [brought in a court that lacked personal jurisdiction] . . . as the filing date *in the [transferee] court*." *See Ross*, 822 F.2d at 1526-28 (emphasis added). And the Eastern District of Louisiana came to the same conclusion when recently considering precisely the laws at issue here. In a very similar case to the one at bar, the defendants argued just as Mabe does now, that the "Plaintiffs' claim [wa]s prescribed under Louisiana law because Plaintiffs neither filed suit in a court of proper venue nor served a defendant before Louisiana's one-year prescriptive period ran." *Harutyunyan*, 2019 WL 5551901, at *1, *3. The court disagreed, reasoning that "§ 1631 is a controlling and constitutionally enacted federal statute that governs the Court's determination of when and where Plaintiffs are considered to have filed suit in this case." *Id.* at 7. The court

therefore can and must govern our determination of when and where Franco is considered to have filed this action. *See Budinich,* 486 U.S. at 198 (stating "state law . . . does not control the resolution of issues governed by federal statute." (internal citation omitted)). Applying § 1631 to the case at bar, we accept that, as far as we are concerned, Franco is deemed to have filed his suit in the Western District of Louisiana on November 22, 2016, the date he actually filed suit in the Eastern District of Texas. *See* 28 U.S.C. § 1631. Thus, for our purposes, Franco must be deemed to have filed his claim "in a court of competent jurisdiction and venue" on that date and thereby interrupted the one-year prescriptive period under Louisiana law, *see* LA. CIV. CODE arts. 3492, 3462, rendering his claim timely. The Louisiana district court therefore erred by granting Mabe summary judgment on the basis that Franco's claim had prescribed.

\*\*\*

For the foregoing reasons, the judgment of the district court is REVERSED and this case is REMANDED for further proceedings.

---

explained that "[u]nder § 1631, a transferred case proceeds as if it had been filed in the transferee court from the outset," and therefore the plaintiffs' claims were not prescribed. *Id.*

EDITH H. JONES, *Circuit Judge,* dissenting:

Although I concur in Parts I and IIA of the panel opinion, I must respectfully dissent from Part IIB. The majority concludes there that 28 U.S.C. § 1631 respects one half of La. Civ. Code Art. 3462 but ignores the other half, thus depriving state prescription law of its complete meaning. I do not believe that Congress, in enacting Section 1631 to provide a remedy for cases accidentally filed in federal courts lacking jurisdiction, also intended to supersede state statutes of limitations. I would affirm the district court's dismissal of this case as prescribed.

Plaintiff Franco filed suit against the trucking company in Texas within one year following his accident. However, Texas courts had no jurisdiction over the defendant, and the federal court was faced with dismissing or transferring the suit to Louisiana, a court of proper personal jurisdiction. The court opted to transfer, with what I agree was de facto an order pursuant to Section 1631. Section 1631 provides that a federal court in this circumstance may, in the interest of justice,

> "transfer such action… to any other such court…in which the action…could have been brought,…and the action… shall proceed as if it had been filed in…the court to which it is transferred *on the date upon which it was actually filed* in…the court from which it was transferred"

(emphasis added). In plain terms, this provision construes the date of filing in the transferee court as the date on which the case commenced in the transferor court. *See, e.g., Phillips v. Ill. Cent. Gulf R.R.,* 874 F.2d 984, 987-88 (5th Cir. 1989) (holding that diversity case transferred from Texas to Louisiana was prescribed despite Section 1631's adoption of the transferor court's filing date); *Ross v. Colo. Outward Bound Sch., Inc.,* 822 F.2d 1524 (10th Cir. 1987) (case not barred by limitations after Section 1631 transfer). But the federal provision does no more.

The majority opinion holds that Section 1631, which has rarely been construed in the context of a statute like Art. 3462,[1] by its terms controls not only the date and place of filing but also the "manner of proceeding" with the case. The "manner of proceeding," evidently, then superseded state limitations law in this diversity case. I disagree. The statute's language that the action "shall proceed" as if it had been filed in the transferee court on the date of filing in the transferor court incorporates only that date, not consequences that might follow from that date under state law.

Accordingly, whether the original filing date is within the statute of limitations becomes a matter for the transferee court to decide, and that issue depends in a diversity case on the law of the forum state. The Supreme Court has held that where service of summons was integrally bound with a state court's statute of limitations, the principles underlying *Erie* require federal courts to apply local law. As the Court explained, "[w]e can draw no distinction in this case because local law brought the case to an end after, rather than before, suit was started in the federal court….We cannot give it longer life in the federal court than it would have had in the state court without adding something to the cause of action." *Ragan v. Merchants Transf. & Warehouse Co.,* 337 U.S. 530, 533-34, 69 S. Ct. 1233, 1235 (1949).

*Ragan* is on point with this case. As I noted above, the majority relies on half of the applicable statute, La. Civ. Code Art. 3462, which states that the one-year prescription period is "interrupted…when the obligee commences action against the obligor in a court of competent jurisdiction and venue." But the rest of the provision states, "[i]f action is commenced in an

---

[1] The majority cites one opinion from a district court in Louisiana. One other such case is *Manieri v. Layirrison*, 1998 WL 458186 (E.D. La. 1998) (holding suit prescribed under Art. 3462 after transfer from court of improper venue under 28 U.S.C. §§ 1404(a) or 1406(a)).

incompetent court or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period." The majority treats Section 1631 "as if" its language, which states that the action shall proceed "as if" it had been filed in the transferee court on the filing date in the transferor court, also settled the question of a valid interruption of prescription under Louisiana law. But applying a retroactive filing date for the suit does not speak to whether the suit is timely under state law. Because Franco did not serve the defendant within the one year prescriptive period in the "incompetent" Texas court, Louisiana Art. 3462 held it barred. In *Phillips, supra,* a transfer under Section 1631 did not compel continuation of a suit commenced outside the Louisiana one-year prescription period, but in *Ross, supra*, the opposite result obtained. Section 1631 is neutral as to state law consequences. Governing law under *Erie* therefore continues to require fealty to the whole of Article 3462.

In *Walker v. Armco Steel Corp.*, the Supreme Court held that *Ragan* is still good law. 446 U.S. 740, 100 S. Ct. 1978 (1980). The Court pointed out that in *Hanna* [*v. Plumer,* 380 U.S. 460, 85 S. Ct. 1136 (1965)] there was a "direct collision" between federal and state procedural rules, whereas in *Ragan* and *Walker* such a clash was avoidable, and the states' service of process requirements—intimately bound up in the states' substantive statutes of limitations—had to apply. *Id.* at 748-49, 100 S. Ct. at 1984-85 ("There is no indication that [Fed. R. Civ. P. 3] was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purpose of state statutes of limitations.").

Applying the reasoning of *Walker* to this case, I contend, contrary to the majority, that the scope of Section 1631 is not so broad as to countermand Louisiana law's integrated prescription and service of process limits. La. Civ. Code Arts. 3492, 3462. *See id.* at 751, 100 S. Ct. at 1985. In fact, the arguments made by the majority here are analogous to those rejected by

*Walker* in considering whether Fed. R. Civ. P. 3 ("An action is commenced by filing a complaint with the court") superseded *Ragan* or the integrated Oklahoma statute of limitations/service of process law in a diversity case. It would be odd if Congress, aware of *Erie* and *Ragan,* had enacted Section 1631 with an eye to obliterating certain state limitations statutes *only* in cases where the plaintiff had first filed in a federal court lacking jurisdiction. Yet the result of the majority's holding is not only to create a split between substantive outcomes in state and federal court in Section 1631 cases, but also a split between results in federal courts based solely on jurisdictional errors in the initial location of filing.[2]

For these reasons, Franco's suit had prescribed upon transfer to Louisiana because he served summons on the defendant outside the one-year bar. I respectfully dissent.

---

[2] If Franco had filed his suit in a Louisiana federal court that possessed personal jurisdiction but proceeded to serve the defendant outside the one-year prescriptive period, Art. 3462 would bar the suit pursuant to *Erie* principles. Federal Rule 3 would not bail him out. According to the majority's opinion here, however, if the plaintiff first filed in a court lacking personal jurisdiction and served process after the one-year prescriptive limit, Art. 3462 plays no role, he may have a Section 1631 transfer, and his case will proceed.